COPY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - x
                                   :
UNITED STATES OF AMERICA           :   No. 3:02CR-274 (SRU)
                                   :   915 Lafayette Boulevard
               vs.                 :   Bridgeport, Connecticut
                                   :
                                   :   February 20, 2003
JOSE ANIBAL MENDEZ                 :
                                   :
- - - - - - - - - - - - - - - - - x

                    CHANGE OF PLEA

B E F O R E:

    THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

A P P E A R A N C E S:

    FOR THE GOVERNMENT:

        OFFICE OF THE UNITED STATES ATTORNEY
            450 Main Street
            Hartford, Connecticut 06103
        BY: LEONARD C. BOYLE, AUSA

    FOR THE DEFENDANT:

        MATTHEW B. SMITH, ESQ.
        1206 Westminister Street
        Providence, Rhode Island 02909

                    Susan E. Catucci, RMR
                    Official Court Reporter
                    915 Lafayette Boulevard
                Bridgeport, Connecticut 06604
                    Tel: (203) 246-6385

EXHIBIT A

1

(2:10 O'CLOCK, P.M.)

1          THE COURT:  Good afternoon.  We're here in the

2    matter of United States v. Jose Anibal Mendez.  Could I

3    have appearances of counsel please?

4          MR. BOYLE:  Representing the United States, Your

5    Honor, Assistant United States Attorney Leonard Boyle.

6          MR. SMITH:  Good afternoon, Your Honor.  On

7    behalf of Mr. Mendez, Matthew Smith, Providence, Rhode

8    Island.

9          THE COURT:  Very good, thank you.  And I would

10   note that Joe Zampano from the Probation Office is with us

11   today.  And I understand that our Interpreter today is

12   Virginia Saltzman.

13         THE INTERPRETER:  Good afternoon, Your Honor.

14         THE COURT:  Good afternoon.  I'd like to start,

15   Ms. Saltzman, with you if I could.  Would you first say

16   for the record in general your qualifications as an

17   interpreter?

18         THE INTERPRETER:  Yes, Your Honor.  I have a

19   degree in Spanish which included a study of abroad

20   program.  I was a translator for several years, followed a

21   number of interpreting course and workshops, have a few

22   years' experience as an interpreter.  I have been

23   certified in the State of California.  I've been sworn in

24   the State of Connecticut, who does not have a

25

1  certification yet, and have also passed the certification

2  test for the agency that attends Immigration Court

3  interpreters here in the State of Connecticut.

4        THE COURT: Very good, and have you had a chance

5  to speak with Mr. Mendez today?

6        THE INTERPRETER: Yes, I have, Your Honor.

7        THE COURT: Have the two of you had any

8  difficulty understanding each other?

9        THE INTERPRETER: No, Your Honor.

10       THE COURT: Do you have, do you know of any

11 other reason why you couldn't fairly and accurately

12 translate the proceedings today?

13       THE INTERPRETER: No, I don't.

14       THE COURT: What I'd like to do then is ask the

15 clerk to swear you in.

16       THE CLERK: Yes, Your Honor.

17       (Whereupon the Interpreter was duly sworn by the

18 Clerk.)

19       THE COURT: Very good, thank you. If at any

20 time you don't hear something or we're speaking too

21 quickly for you to effectively translate, please just let

22 me know. I want to be sure Mr. Mendez fully understands

23 everything that's going on today.

24       THE INTERPRETER: Thank you very much.

25       THE COURT: Thank you. All right, and I

3

1    understand that we're here for a change of plea, is that

2    right?

3                    MR. BOYLE:  Yes, Your Honor.

4                    MR. SMITH:  That is correct, Your Honor.

5                    THE COURT:  Okay.  Mr. Mendez, the first thing I

6    want to do is tell you that I'm in no hurry today.  If you

7    decide to plead guilty, you're going to be giving up some

8    very important constitutional rights and accepting other

9    consequences, and I want to make sure that you understand

10   each of those rights and consequences before you plead

11   guilty.  So if at any time you have any questions or

12   concerns, please let me know, and we'll try and address

13   those questions or give you time to speak with your

14   lawyer.  Do you understand?

15                    THE INTERPRETER:  Yes, Your Honor.

16                    THE COURT:  Very good.  All right.  Mr. Mendez

17   was arraigned before Magistrate Judge Thomas P. Smith on

18   October 10 last year and I'm sure at that time that he was

19   advised of certain rights.  I want to start by reminding

20   you, Mr. Mendez, of some of those rights.  First off, you

21   have the right to remain silent.  You don't have to say

22   anything today in court.  You don't have to answer my

23   questions, and if you start making a statement or

24   answering questions, you can stop at any time.  You can

25   speak with your lawyer before making a statement or before

4

1    answering my questions. Do you understand?

2        (All of the following answers were given by the

3    Defendant through the Interpreter unless otherwise

4    designated.)

5        THE INTERPRETER: Yes, Your Honor.

6        THE COURT: All right. You have the right to

7    counsel; that is, a right to a lawyer and if at any time

8    you cannot afford counsel, counsel will be appointed for

9    you. Do you understand that?

10       THE INTERPRETER: Yes, Your Honor.

11       THE COURT: All right. And I also want to tell

12   you that Mr. Smith is here with only one purpose and that

13   is to represent you and to protect your interests, and I

14   also want to be sure that you understand that your private

15   conversations with him will remain private so you should

16   feel very free to say whatever you need to say to

17   Mr. Smith to help him best represent you, because the

18   attorney-client privilege will protect your private

19   conversations from disclosure to me or the prosecutor or

20   anyone else. Do you understand?

21       THE INTERPRETER: Yes, Your Honor.

22       THE COURT: All right. Mr. Mendez, in order to

23   proceed further with a guilty plea I have to ask you

24   certain questions and you have to answer those questions

25   under oath, which obviously means waiving your right to

5

1  remain silent, at least to that extent. Are you prepared

2  to do that?

3      THE INTERPRETER: Yes, Your Honor.

4      THE COURT: All right. I'd ask the clerk please

5  to swear the defendant.

6      THE CLERK: Yes, Your Honor.

7      (Whereupon the Defendant was duly sworn by the

8  Clerk.)

9      THE INTERPRETER: Yes, I do.

10     THE COURT: Mr. Mendez, I want to be sure that

11  you understand now that you've been sworn to tell the

12  truth, if you make a false statement you could be

13  prosecuted for making a false statement or for perjury.

14  Do you understand?

15     THE INTERPRETER: Yes, I do.

16     THE COURT: All right. What is your full name?

17     THE INTERPRETER: Jose Anibal Mendez.

18     THE COURT: Have you ever used any other names?

19     THE INTERPRETER: Yes.

20     THE COURT: What other names?

21     THE INTERPRETER: Francisco Mendez.

22     THE COURT: All right. What is your date of

23  birth?

24     THE INTERPRETER: Well, my birth date is

25  October 24th, 1979.

6

1    THE COURT: And where were you born?

2    THE INTERPRETER: In Santo Domingo.

3    THE COURT: Are you an U. S. citizen?

4    THE INTERPRETER: I'm a resident.

5    THE COURT: Please tell me how far you went in

6    school.

7    THE INTERPRETER: School? Fourth grade at the

8    primary level.

9    THE COURT: Are you now or have you recently

10   been under the care of either a doctor or a psychiatrist?

11   THE INTERPRETER: No.

12   THE COURT: In the last 48 hours, have you taken

13   any narcotic drugs, prescription medications or consumed

14   any alcoholic beverages?

15   THE INTERPRETER: No, not in jail.

16   THE COURT: Have you ever been hospitalized or

17   treated for alcoholism or narcotics addiction?

18   THE INTERPRETER: Yes.

19   THE COURT: Okay. How long ago?

20   THE INTERPRETER: I don't remember exactly but I

21   think it was around 2000.

22   THE COURT: And --

23   THE INTERPRETER: Yeah, '99, 2000.

24   THE COURT: And what was the nature of the

25   treatment?

1    THE INTERPRETER:  Well, they didn't give me any

2    pills there in the hospital.  Well, they brought me

3    unconscious to the hospital.  I didn't know where I was.

4    And then I was okay.  They didn't give me anything.

5    THE COURT:  All right, and what was the

6    hospitalization for?

7    THE INTERPRETER:  Well, alcoholism.

8    THE COURT:  And is there any aspect of your

9    alcoholism that prevents you from fully understanding

10   what's going on today?

11   (Defendant conferring with counsel.)

12   THE INTERPRETER:  Due to the alcoholism, I'd

13   used drugs and marijuana before that.

14   THE COURT:  All rightbut does any of that affect

15   your ability to understand what's happening today?

16   THE INTERPRETER:  Yes, well, it has affected my

17   mind.

18   THE COURT:  All right.  Is your mind clear

19   today?

20   THE INTERPRETER:  Yes, yes.

21   THE COURT:  You understand what's going on?

22   THE INTERPRETER:  Yes.

23   THE COURT:  All right, and you've had

24   conversations with your lawyer?

25   THE INTERPRETER:  Yes.

8

1    THE COURT: And you've understood what he told

2   you?

3        THE INTERPRETER: Yes.

4        THE COURT: Mr. Smith, have you had any

5   difficulty communicating with Mr. Mendez today?

6        MR. SMITH: None whatsoever. In fact, today was

7   one of my better days with him. I've had any number of

8   conversations with him regarding this case with,

9   obviously, the use of a Spanish interpreter from my

10  office, never had a problem communicating and I feel very,

11  very confident today that he understands fully what he's

12  doing.

13       THE COURT: All right.

14       MR. SMITH: And I make that representation to

15  the court.

16       THE COURT: Do you have any concerns whatsoever

17  about his competency to proceed today?

18       MR. SMITH: I believe that he's competent,

19  Judge. His educational background, I informed him you

20  would inquire about that, and obviously it's a low level

21  of schooling. He has indicated to me he's able to read

22  and write in his native language which is Spanish. All my

23  communications with him have been in that native language

24  and native tongue. The plea agreement's been fully

25  translated for him with my interpreter. I'm satisfied,

9

1    Judge, he's competent and he understands what he's doing

2    today. He's doing it because he feels it's in his best

3    interest to do so.

4              THE COURT: All right, thank you. Mr. Mendez,

5    you've had various meetings and conversations with

6    Mr. Smith. Are you satisfied with his representation of

7    you so far?

8              THE INTERPRETER: Yes, everything is fine up

9    until now.

10             THE COURT: Good. All right. Mr. Mendez, have

11   you been given a copy of what we call an indictment, that

12   is, the written charges against you?

13             THE INTERPRETER: Yes.

14             THE COURT: And have you had that translated for

15   you?

16             THE INTERPRETER: Yes.

17             THE COURT: Okay, and you've talked about the

18   charges in the indictment with your lawyer?

19             THE INTERPRETER: Yes.

20             THE COURT: All right. We're going to focus

21   today on Count Two of the indictment and what I'm going to

22   do is ask Mr. Boyle, the prosecutor, to describe for us

23   two things: First, the nature, the general nature of the

24   charge in Count Two, and second, the penalties that you

25   could face, both the maximum and minimum penalties, if you

1  decide to plead guilty today. All right? So please

2  listen carefully. If you have any questions let me know.

3  Mr. Boyle?

4          MR. BOYLE: Thank you, Your Honor. Your Honor,

5  Count Two of the indictment charges that on or about

6  September 10th of 2002, Mr. Mendez distributed, that is

7  sold more than 5 grams of cocaine base or crack to a

8  person who was acting as an agent of the federal

9  government. The count charges a violation of Title 21 of

10  the United States Code, Section 841(a)(1). It carries a

11  maximum possible prison sentence of 40 years; a mandatory

12  minimum prison sentence of five years; a fine of as much

13  as two million dollars; a mandatory special assessment of

14  $100; and a term of supervised release of at least four

15  years and possibly as much as life.

16          THE COURT: Thank you. Mr. Mendez, do you

17  understand the charge against you?

18          THE INTERPRETER: Yes.

19          THE COURT: And do you understand the penalties

20  that you face should you plead guilty today?

21          THE INTERPRETER: Yes.

22          THE COURT: All right. What I wanted to do now

23  is review with you various rights that you would be

24  waiving, that is giving up if you decide to plead guilty.

25  I want to be sure that you understand each of these

11

1  rights, so if at any time you don't understand something

2  that I say, please let me know.

3           THE INTERPRETER:  Okay.

4           THE COURT:  The first and most important thing

5  that you have to understand is that you do not have to

6  plead guilty even if you are guilty.  Under our system of

7  law, the prosecutor has the burden of proving your guilt

8  beyond a reasonable doubt and if the prosecutor cannot do

9  that, the jury has a duty to find you not guilty.  So even

10  if you're guilty, you have a choice.  You can plead guilty

11  or you can put the government to its proof.  And the way

12  that you require the government to prove your guilt is to

13  say not guilty when you're asked how you plead.

14           If you plead not guilty, you are entitled to a

15  speedy public trial by a jury with the assistance of a

16  lawyer on the charges in the indictment.  At the trial,

17  you would be presumed innocent and the government would

18  have to overcome that presumption and prove you guilty by

19  competent evidence and beyond a reasonable doubt.  You

20  would not have to prove that you're innocent.  If the

21  government were to fail to carry its burden, the jury

22  would have a duty to find you not guilty.

23           During the course of the trial, witnesses for

24  the government would have to come here to court and

25  testify under oath in your presence and in the presence of

1   your lawyer and your lawyer would have the right to cross

2   examine those witnesses.  He could object to evidence

3   offered by the government and could offer evidence on your

4   behalf.  And when I talk about cross examining witnesses,

5   I mean that your lawyer can ask them questions either to

6   show that they are not worthy of belief or to bring out

7   information that may be helpful to your case.

8            At trial you would have the right to testify if

9   you chose to do so but you could not be required to

10  testify.  Just as you have the right to remain silent

11  today, you would have the right to remain silent

12  throughout the trial.  Under our Constitution, a defendant

13  in a criminal case cannot be required to take the witness

14  stand and say anything that could be used to show that

15  he's guilty of the crime with which he is charged.  And if

16  you decide not to testify at trial, I would instruct the

17  jury that they could not hold that against you.  They

18  could not assume that you were guilty or infer that you

19  were guilty because you decided not to testify.

20           Whether or not you yourself testified, you would

21  have the right to issue subpoenas which are a way of

22  requiring others to come to court to testify in your

23  defense.  So if there is someone out there who has

24  information that may be helpful to your defense but who

25  doesn't want to get involved, doesn't want to come to

1    court, you may have a way to require them to come to court

2    and act as a witness.

3        Now, if you decide to plead guilty, I'm going to

4    have to ask you questions about what you did in order to

5    satisfy myself that you are in fact guilty. You're going

6    to have to answer my questions and admit your guilt here

7    in court. If you plead guilty and I accept your plea,

8    you're going to be giving up your constitutional right to

9    a trial and all the other rights that I just described.

10   There will be no trial of any kind and no right to appeal

11   your conviction, that is, the fact of your guilt, although

12   under some circumstances, you and the government have the

13   right to appeal the sentence I impose, that is, the

14   punishment. But if you plead guilty today I'm simply

15   going enter a finding of guilty on the basis of your

16   guilty plea. Do you understand everything I've said so

17   far?

18        THE INTERPRETER: Yes.

19        THE COURT: I want to spend a moment on your

20   right to appeal. If you plead guilty today, you're going

21   to be found guilty. You're not going to be able to come

22   back after you're sentenced and withdraw your guilty plea

23   or appeal your conviction. At that point, if you think

24   you've been sentenced unfairly, all you can do is appeal

25   your sentence. Do you understand?

1          THE INTERPRETER:  Yes.

2          THE COURT:  Okay.  Mr. Smith, have you had a

3    chance to discuss with Mr. Mendez the limitations on his

4    right to appeal?

5          MR. SMITH:  I have, Your Honor, and if I could

6    just briefly, the way I explained it to him was that,

7    we've always talked in terms of the Sentencing Guidelines

8    and that, just as Your Honor has just said, I explained to

9    him that there is a difference between appealing guilt and

10   appealing a sentence that this court might give, and that

11   my discussions between the U. S. Attorney and Mr. Mendez

12   about what his sentence may not be what Probation or the

13   Court ultimately determine it to be.  If the Court

14   sentenced him to more than the appropriate guideline, then

15   we would have a right to appeal that sentence, just as the

16   government would if you decided to go below the Sentencing

17   Guideline and the government would have a right to appeal,

18   and that's essentially how I explained the appealability

19   of the sentence to him.

20         THE COURT:  Good, thank you.  Mr. Mendez, I also

21   want to be sure that you understand that you have a right

22   to have a grand jury find probable cause to believe

23   certain facts, as well as a jury to find those facts

24   beyond a reasonable doubt, and those facts are ones that

25   may affect the length of your sentence.  Here, the most

1  obvious example is the quantity of drugs at issue. If you

2  plead guilty today and enter into the plea agreement that

3  I have seen in draft form and I accept your plea, then

4  there is not going to be anyone deciding the quantity of

5  drugs in this case except for me, and I'm going to decide

6  that issue by a lower standard, that is an easier standard

7  for the government to prove than the beyond a reasonable

8  doubt. I'm going to decide that by what we call

9  preponderance of the evidence.

10      In addition, when making that determination as

11  in making any sentencing determination, I can consider

12  information that a jury might not be allowed to hear under

13  the rules of evidence. So, in essence, what I'm telling

14  you is that if you plead guilty today, there are facts

15  that I may be asked to find in connection with your

16  sentencing and it's going to be easier for the government

17  to prove those facts to me than it would be to prove them

18  to a jury. And I want to make sure that you understand

19  that distinction and that you are willing to waive your

20  right to have a jury determine facts that may affect your

21  sentencing. Are you willing to do that?

22      THE INTERPRETER:  Yes.

23      THE COURT:  I also want to be sure that you

24  understand that the offense with which you are charged

25  today is a felony offense and if you plead guilty you will

1  be a convicted felon and that will have some important

2  consequences for you. Most importantly, it will almost

3  surely lead to your deportation from the United States if

4  you are not, as I understand, an United States citizen.

5  It will also, to the extent that you have certain civil

6  rights, it will deprive you of those civil rights,

7  including the right to vote, the right to hold public

8  office, the right to serve on a jury and the right to

9  possess any kind of firearm.

10      In addition, should you be convicted in the

11  future of any other criminal conduct, the fact that you

12  have a felony conviction on your record will likely lead

13  to a stiffer sentence for any future wrongdoing. Do you

14  understand each of these consequences of pleading guilty?

15      THE INTERPRETER:  I'd like to speak with my

16  attorney.

17      THE COURT:  Certainly.

18      (Pause, Defendant conferring with Counsel.)

19      THE COURT:  Okay.  Mr. Mendez, you understand

20  each of the conditions that I just reviewed?

21      THE INTERPRETER:  Yes.  Yes, Your Honor.

22      THE COURT:  And are you willing to accept the

23  consequences of pleading guilty today?

24      THE INTERPRETER:  Yes.

25      THE COURT:  And you're willing to give up each

1  of the rights that we described earlier, your right to

2  trial and so forth?

3           THE INTERPRETER: Yes, Your Honor.

4           THE COURT: I understand that there is a written

5  plea agreement?

6           MR. BOYLE: There is, Your Honor. I've given it

7  to Mr. Smith. I believe Mr. Smith and his client have

8  signed it.

9           THE COURT: All right. If that's been fully

10  signed why don't you hand it up, please?

11          MR. SMITH: I will, Your Honor.

12          (Hands Court.)

13          THE COURT: Mr. Mendez, I've been given a seven

14  page document. It has today's date on it and it consists

15  of a six page letter and the last page is called

16  Stipulation of Offense Conduct and it appears that you

17  signed it on page six and page seven, is that right?

18          THE INTERPRETER: Yes.

19          THE COURT: Okay. Did you have a chance to have

20  someone read this letter to you, translate it to you

21  before you signed it?

22          THE INTERPRETER: Yes.

23          THE COURT: And you had a chance to talk to

24  Mr. Smith about it before you signed it?

25          THE INTERPRETER: Yes.

18

1    THE COURT: And you understand what it says?

2        THE INTERPRETER: Yes.

3        THE COURT: Okay. What I'm going to do is ask

4    Mr. Boyle to give us a summary of the important provisions

5    of the plea agreement letter, and if he says anything

6    that's different from your understanding or anything that

7    surprises you, I want you to tell me. Okay?

8        THE INTERPRETER: Okay.

9        THE COURT: Thank you.

10       MR. BOYLE: Your Honor, the agreement provides

11   that Mr. Mendez will plead guilty to Count Two of the

12   indictment which charges him with possession with intent

13   to distribute and distribution of 5 grams or more of

14   cocaine base or crack cocaine. The government agrees that

15   it will dismiss Counts One, Three and Four of the

16   indictment at the time of sentencing.

17       The agreement goes on to provide that Mr. Mendez

18   understands that there are two elements of the crime for

19   which he is about to plead guilty. That is, first, that

20   on or about September 10th of 2002, he knowingly and

21   intentionally possessed more than 5 grams of cocaine base.

22   And, secondly, that he did so intending to distribute it

23   to another person. The agreement sets forth the maximum

24   penalties of the offense; namely, that Mr. Mendez is

25   subject to a potential sentence of 40 years in prison; a

1    mandatory minimum term of imprisonment of five years; as

2    much as a two million dollar fine; a term of supervised

3    release of at least four years and as much as life; and a

4    mandatory 100-dollar assessment.

5         The agreement provides further that Mr. Mendez

6    agrees to forfeit any right or claim that he might have in

7    a 1992 Acura Legend, Connecticut registration 810 RGH,

8    registered to Roberto Torres.  That, Your Honor, was the

9    car that was used to distribute the crack cocaine to the

10   confidential informant at the time of the instance charged

11   in the indictment.

12        The agreement goes on to provide that Mr. Mendez

13   waives his right to have a jury find the amount of crack

14   cocaine that was distributed in this case.

15        By signing the agreement, Mr. Mendez recognizes

16   that the Sentencing Guidelines apply to this particular

17   offense, as the court has already discussed with him, and

18   as Mr. Smith has pointed out, both parties have reserved

19   their rights to appeal the court's sentence if they feel

20   that it is inconsistent with prevailing law.

21        Mr. Mendez recognizes that the government will

22   share information in its file with the probation office.

23        Mr. Mendez waived the rights that Your Honor has

24   previously discussed with him.

25        Finally, Mr. Mendez also recognizes that certain

1  other rights such as the right to vote, right to hold

2  public office, the right to serve on a jury or to possess

3  firearms might be taken away from him as a result of his

4  conviction following his guilty plea.

5          Mr. Mendez recognizes that by pleading guilty to

6  this offense, he will satisfy any criminal liability that

7  he has for the events charged in the indictment.

8          And, finally, Mr. Mendez recognizes that upon

9  completion of any term of imprisonment that he is likely

10  to be deported by the Immigration and Naturalization

11  Service.  Thank you, Your Honor.

12          THE COURT:  Thank you.  All right.  Mr. Smith,

13  anything to add?

14          MR. SMITH:  Nothing further, Your Honor.  That,

15  I think, accurately describes the plea agreement as I've

16  discussed it with Mr. Mendez.

17          THE COURT:  All right.

18          MR. SMITH:  And as I stated before, Judge, I

19  believe he's fully competent and aware of his actions

20  today.

21          THE COURT:  Okay.  I want to review a couple

22  things with Mr. Mendez but before I do, I think there may

23  be one correction to be made to the potential sentence in

24  the plea agreement letter; specifically, the impact of any

25  violation of any condition of supervised release which I

21

1    think could subject Mr. Mendez to a further term of

2    imprisonment of up to three years under 18 USC Section

3    3583(e), but I want counsel to agree with me before any

4    changes are made to the letter.

5         MR. BOYLE: Your Honor, I believe that the court

6    is correct, it should be three years.

7         THE COURT: Okay. You can either just

8    acknowledge that fact on the record or we can actually

9    modify it by hand and have you initial the plea agreement.

10   I'm not sure what you prefer.

11        MR. SMITH: I think if I can take a moment, Your

12   Honor, just to explain to him what the court has pointed

13   out, we can do it on the record.

14        THE COURT: All right.

15        (Counsel conferring with Defendant.)

16        MR. SMITH: I believe he understands that,

17   Judge.

18        THE COURT: All right, and both counsel are

19   stipulating that that change in effect will be made on the

20   record rather than in the letter itself?

21        MR. BOYLE: Yes, Your Honor.

22        MR. SMITH: That's fine, Judge. Thank you.

23        THE COURT: All right, thank you. Mr. Mendez, I

24   just want to touch on two other points. First is there is

25   going to be a condition of supervised release that if you

22

1    are deported you will not return to the United States

2    without the written permission of the Attorney General of

3    the United States, and I want to be sure that you

4    understand that should you return to the United States

5    without that written permission, that that is a violation

6    of federal law that could subject you to prosecution and

7    an additional term of imprisonment.  Do you understand

8    that?

9              THE INTERPRETER:  Yes, Your Honor.

10             THE COURT:  All right.  And, finally, the last

11   page of this document called Stipulation of Offense

12   Conduct, what you're doing by signing that page is

13   agreeing that the facts set forth there actually happened.

14             THE INTERPRETER:  Yes.

15             THE COURT:  All right?  Have you read that page?

16             THE INTERPRETER:  Yes, Your Honor.

17             THE COURT:  And those things actually happened?

18             THE INTERPRETER:  Yes, Your Honor.

19             THE COURT:  All right.  Thank you.  Mr. Mendez,

20   before this letter and stipulation were prepared, your

21   lawyer and the prosecutor discussed the circumstances

22   under which you would plead guilty and I want to make sure

23   that this written document completely reflects the terms

24   under which you have decided to plead guilty.  So what I'm

25   asking you now is is there any other promise or statement

23

1   that you're relying upon in deciding to plead guilty today

2   that is not in this written document?

3          THE INTERPRETER:  No, it's fine.

4          THE COURT:  All right.  This is the entire deal?

5          THE INTERPRETER:  And there is nothing else

6   that's not in that, like what?

7          THE COURT:  I want to make sure that no one has

8   told you something about what's going to happen or how

9   you'll be treated or whatever that isn't in here.

10         THE INTERPRETER:  Yes.

11         THE COURT:  Is that correct?

12         THE INTERPRETER:  Yes.

13         THE COURT:  There is nothing else?

14         THE INTERPRETER:  No.

15         THE COURT:  All right.  Has anybody tried to

16   force you or intimidate you or scare you into pleading

17   guilty today?

18         THE INTERPRETER:  No.

19         THE COURT:  Is it your own decision to plead

20   guilty today?

21         THE DEFENDANT:  Yes.

22         THE INTERPRETER:  Yes.

23         THE COURT:  Are you pleading guilty because you

24   are guilty?

25         THE DEFENDANT:  Yes.

1       THE INTERPRETER:  Yes.

2       THE COURT:  All right.  I ask the courtroom

3  deputy please to file the written plea agreement and

4  stipulation of offense conduct.

5       (Pause)

6       THE COURT:  Mr. Mendez, we've talked about it

7  before and it's in your plea agreement but because we are

8  getting close to the time when you're going to plead

9  guilty, I want to make sure that you understand the

10  sentence that you face if you plead guilty today, and that

11  is at least five years and up to 40 years in prison; at

12  least four years and up to the rest of your life on what

13  we call supervised release, and supervised release is a

14  period of restrictions on your activities and a period

15  when there are conditions on your activities, things that

16  you are required to do, and should you violate any of the

17  restrictions or conditions of supervised release, you

18  could be sent back to prison for up to three years without

19  any credit for time spent in prison or on supervised

20  release.  You could face a fine of up to two million

21  dollars.  And then I'm required to impose a mandatory

22  special assessment of $100.  Do you understand?

23       THE INTERPRETER:  Yes, Your Honor.

24       THE COURT:  Okay.  I also want to be sure that

25  you understand that parole has been abolished in the

25

1   federal courts so that if you are sent to prison, you will

2   not be released early on parole.

3         THE INTERPRETER: I don't understand. I'd like

4   to ask my attorney a question.

5         THE COURT: Yes.

6         (Defendant conferring with Counsel.)

7         MR. SMITH: Maybe I can explain it this way.

8   The way I explained it to him, I explained to him, there

9   is no parole, that there is no early release on your

10  federal sentence. Whatever sentence this court does

11  impose I've explained to him he has to serve 85 percent of

12  that sentence. That is essentially the terms that I put

13  it. He will get, he will essentially be getting

14  15 percent credit for good time or whatever the number is,

15  what the court imposes. I further explained to him there

16  are some opportunities, depending on what prison he is

17  sent to, which may allow him to further reduce his

18  sentence, such as educational opportunities for him, drug

19  programs if he feels he needs it or the court so

20  recommends. He might have been a little confused as to

21  how much time he's actually going to have to do but I've

22  been very clear that there is no parole, no early release,

23  but there may be opportunities because it is a federal

24  prison, there are no opportunities for him to reduce his

25  time, but that has to do with what happens when he gets to

1   wherever he's going to be, having nothing to do with the

2   sentencing of this court, and that's essentially how I

3   explained it to him.  He may have gotten a little confused

4   but he understands there is no early release.  Whatever

5   the sentence is, he gets it and there may be opportunities

6   once he's in prison to reduce that sentence.

7             THE COURT:  All right.  Just to be clear,

8   Mr. Mendez, in some court systems, there is something

9   called a parole board and once you have served a certain

10  percentage of your sentence, say third or a half, you can

11  apply to the parole board to be released from the

12  remainder of your sentence.  That's not available in

13  federal court.  If you're assigned to a facility and you

14  have no disciplinary problems, you will earn credits for

15  what is called good time, so you can reduce the sentence

16  but you will not be released early by a parole board.  Do

17  you understand?

18            THE INTERPRETER:  Yes.

19            THE COURT:  All right.  I want to also be sure

20  that you understand that the sentence that I will impose

21  will depend on what information is available to me about

22  you and about the circumstances of your offense at the

23  time of sentencing.  And if I learn information that

24  causes me to sentence you more harshly than you expect or

25  more harshly than you think is fair, you are not going to

27

1    be permitted to come back and withdraw your guilty plea.

2              THE INTERPRETER:  Yes.

3              THE COURT:  Okay.  We've talked a little bit, I

4    think your lawyer has mentioned the Sentencing Guidelines.

5    I want to be sure that you understand that judges in the

6    federal court have to sentence under what we call the

7    Sentencing Guidelines, and that your sentence will be

8    based primarily on two factors, the seriousness of your

9    offense, which in your case will depend largely on the

10   quantity of drugs.  And, secondly, your criminal history

11   background; that is, the number of past convictions that

12   you have.  And based upon those factors, the court will

13   determine a sentencing range that will apply unless there

14   is a departure from that range upward or downward.  Those

15   types of departures are rare and you should not assume

16   they would be available in your case.  Mr. Mendez, do you

17   understand generally how the Sentencing Guidelines work?

18             THE INTERPRETER:  Yes, Your Honor.

19             THE COURT:  And do you understand that -- well,

20   let me start again.  Have you discussed with your lawyer

21   how the Sentencing Guidelines might apply in your case?

22             THE INTERPRETER:  Yes.

23             THE COURT:  All right.  Now, I want to be sure

24   that you understand that whatever advice or prediction

25   your lawyer has made about your likely sentencing range

1    under the guidelines, it's not binding upon me, that I

2    have to make my own independent determination of how the

3    guidelines apply in your case.  Do you understand?

4              THE INTERPRETER:  Yes, Your Honor.

5              THE COURT:  Mr. Smith, have you had a chance to

6    discuss the Sentencing Guidelines?  I think you mentioned

7    this before, that you have had that opportunity.  Are you

8    confident Mr. Mendez understands that any prediction or

9    advice you may have given him is not binding upon the

10   court?

11             MR. SMITH:  Absolutely, Your Honor.  I've

12   discussed this, as I indicated to the court earlier, on

13   any number of occasions.  I've discussed in general terms

14   how the guidelines apply and how they may apply in his

15   case, and I mean, I'm fairly confident I can, having done

16   this for nine or ten years now, that I can somewhat

17   accurately -- I'm trying to search -- somewhat accurately

18   indicate where the court might end up, but he's fully

19   aware that the court is going to make its own independent

20   determination and that is outlined for him.  It is my

21   understanding and U. S. Attorney's understanding this is

22   not binding on the Court.  He understands that Probation

23   will visit him with me and that Probation will go a long

24   way towards determining which way the Court is going.  I'm

25   satisfied that he understands that, Judge.

29

1    THE COURT: Very good. All right, Mr. Mendez,

2    in your plea agreement letter are set forth the two

3    elements of the offense in Count Two. I'm going to ask

4    Mr. Boyle to do two things: First, to review those for us

5    again and then, second, to tell us how the government

6    believes it could prove each of these elements were this

7    case to go to trial. And just to be clear, when we talk

8    about the elements of an offense, those are the things

9    that the government has to prove to a jury before a jury

10    can find you guilty. So, Mr. Boyle is going to tell us

11    what those two things are and how the government believes

12    it could prove them. Please listen carefully because I'm

13    going to ask you when he's done if there is anything that

14    he says that you think is incorrect.

15        THE INTERPRETER: Yes.

16        THE COURT: All right?

17        THE INTERPRETER: Yes.

18        THE COURT: Mr. Boyle?

19        MR. BOYLE: Thank you, Your Honor. Your Honor,

20    in order to prove Count Two of the indictment, the

21    government would have to establish, first, that on or

22    about September 10th, 2002, Mr. Mendez possessed crack

23    cocaine in an amount more than 5 grams and that he did so

24    knowingly and intelligently. Secondly, the government

25    would have to establish to the jury's satisfaction that he

30

1  did so intending to distribute that crack cocaine to

2  another person.

3       In order to prove that charge, the government

4  would introduce the following testimony: First, the

5  government would introduce testimony from two cooperating

6  individuals who would testify that over a period of time

7  leading up to September 10th, 2002, each of these persons

8  had conversations with Mr. Mendez in which they discussed

9  in coded terms the purchase of crack cocaine.

10  Specifically on September 10th, these two persons would

11  testify that they had a telephone conversation, actually a

12  series of conversations with Mr. Mendez in which they

13  agreed to meet Mr. Mendez in Colt Park in Hartford, and

14  purchase crack cocaine at the park.  They would go on to

15  testify that, in fact, about 5:00 o'clock in the evening

16  on September 10, they drove to Colt Park, they met there

17  with Mr. Mendez, who was driving a tan Acura which was

18  described earlier.  Mr. Mendez got in the car with the two

19  cooperating individuals and, once in the car, delivered

20  what later proved to be 38 grams of crack cocaine in

21  exchange for $870.

22       The government would also introduce testimony

23  from surveillance agents of the Drug Enforcement

24  Administration who would testify that they monitored, that

25  is listened to telephone conversations between Mr. Mendez

1  and the cooperating individuals. Those agents would play

2  for the jury the tape recorded conversations in which

3  Mr. Mendez discussed the September 10th transaction with

4  the cooperating individuals. And those agents would go on

5  to testify that they gave the cooperators money to

6  purchase crack from Mr. Mendez, and that they then went to

7  Colt Park and observed Mr. Mendez meet with the two

8  cooperating persons and observed Mr. Mendez enter the car

9  that the cooperators were in where the transaction took

10 place.

11         Finally, the government would introduce evidence

12 from a chemist at the Drug Enforcement Administration

13 Laboratory who would testify that the material sold to the

14 cooperators with Mr. Mendez on September 10 was in fact

15 cocaine base and weighed approximately 38 grams.

16         Thank you, Your Honor.

17         THE COURT:  Thank you.  Mr. Mendez, first, do

18 you understand the elements, that is what the government

19 has to prove to a jury before you could be convicted?

20         THE INTERPRETER:  ·Yes, Your Honor.

21         THE COURT:  All right, and you heard Mr. Boyle

22 describe what the government believes it could prove at

23 trial.  Is there anything that he said that you think is

24 incorrect?

25         THE INTERPRETER:  No, no, there isn't anything.

32

1    THE COURT: All right. So is it correct that in

2    September 2002, approximately September 10th, 2002, you

3    possessed more than 5 grams of crack cocaine?

4        THE INTERPRETER: Yes.

5        THE COURT: And you knew that it was crack

6    cocaine?

7        THE INTERPRETER: Yes.

8        THE COURT: And it was your intention to sell

9    that crack cocaine to another person?

10       THE INTERPRETER: I didn't sell it. We

11   abandoned that transaction.

12       THE COURT: But you intended to sell it to

13   someone else, is that right?

14       THE INTERPRETER: Yes.

15       THE COURT: All right. Mr. Boyle, any further

16   inquiry needed?

17       MR. BOYLE: No, Your Honor, I don't believe so.

18       THE COURT: Mr. Mendez, it is now time to take

19   your plea. If you have any questions, if you want time to

20   speak to your lawyer, please let me know now.

21       THE INTERPRETER: Yes, please.

22       THE COURT: You want to speak with your lawyer?

23       THE DEFENDANT: (Nodding head affirmatively.)

24       THE COURT: All right, go ahead.

25       (Defendant conferring with counsel.)

33

1   THE COURT: All right. Are you ready to

2   proceed?

3   THE DEFENDANT: Yes.

4   THE INTERPRETER: Yes.

5   THE COURT: I'd ask the clerk please to put the

6   defendant to plea.

7   THE CLERK: In the case of the United States

8   versus Jose Anibal Mendez --

9   THE COURT: Actually I need to ask him whether

10  he wants to waive the formal reading of the indictment,

11  I'm sorry.

12  THE INTERPRETER: I'll just plead.

13  THE COURT: All right, thank you.

14  THE CLERK: In the case of the United States v.

15  Jose Anibal Mendez, Criminal Number 3:02CR-274, as to

16  Count Two of the indictment charging you with a violation

17  of Title 21, United States Code, Sections 841(a)(1) and

18  841(b)(1)(B)(iii), and Title 18, United States Code,

19  Section 2, what is your plea?

20  THE INTERPRETER: Guilty.

21  THE CLERK: Your Honor, the defendant pleads

22  guilty to Count Two of the indictment.

23  THE COURT: Thank you. On the basis of the

24  written plea agreement and stipulation of offense conduct,

25  the answers given by the defendant under oath in court to

1    my questions and in response to comments of the Assistant

2    United States Attorney, it is the finding of the court in

3    the case of United States v. Jose Anibal Mendez that the

4    defendant is fully competent and capable of entering an

5    informed plea, that the defendant is aware of the nature

6    of the charge and the consequences of the plea and that

7    the plea of guilty is a knowing and voluntary plea

8    supported by an independent basis in fact containing each

9    of the essential elements of the offense.  The plea to

10   Count Two of the indictment is, therefore, accepted and

11   the defendant is now adjudged guilty of that offense.

12   Accordingly a finding of guilty shall enter and this case

13   is refer to the U. S. Probation Office for a presentence

14   investigation.

15        Mr. Mendez, Mr. Zampano of the U. S. Probation

16   Office is with us in court today and either he or someone

17   else from that office will be interviewing you and

18   probably your family and friends in the near future.  The

19   purpose of those interviews is to put together what's

20   called a presentence report and that document is the most

21   important piece of information that I will rely upon when

22   it comes time to sentence you.  So it's important you

23   understand a couple of things:

24        First, the probation officer works for the

25   court, not for the prosecutor, so generally it's in your

1  interest if you cooperate with the probation officer and

2  provide the information required for the presentence

3  report. But I want to be sure that you understand, as

4  I've told you before, that if information comes to me and

5  I rely upon that information at sentencing, you could be

6  sentenced more harshly even if that information came from

7  you or your family and friends. So it's important that

8  you discuss with Mr. Smith what you want to say and what

9  you don't want to say to the probation officer. Do you

10  understand?

11          THE INTERPRETER:  Yes, Your Honor.

12          THE COURT:  I also want to be sure that you

13  understand that you have the right to have your lawyer

14  present during any interview by the probation office. Do

15  you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And, again, your private

18  conversations will remain private, so you can turn to

19  Mr. Smith and discuss whatever you need to with him

20  confident that that will not hurt you.

21          THE INTERPRETER:  Yes.

22          THE COURT:  All right? I want to discuss

23  scheduling. Sentencing is scheduled for 3:30 p.m. on May

24  9, 2003 here in Courtroom One in Bridgeport. The

25  presentence report must be disclosed to the defendant,

1    counsel for the defendant and the government by April 3rd,

2    2003. Final objections shall be submitted no later than

3    April 15th, 2003. And the revised presentence report must

4    be disclosed to counsel and to the court no later than

5    April 22, 2003. Any motions and supporting memoranda

6    should be filed either by the government or defense

7    counsel no less than 10 days prior to sentencing, with any

8    responses or any general sentencing memoranda to be filed

9    no later than five days prior to sentencing. Any

10   questions or concerns about that schedule?

11        MR. BOYLE: No, Your Honor.

12        MR. SMITH: No, Your Honor.

13        THE COURT: Very well. Is there anything else

14   we need to take up today?

15        MR. BOYLE: No, Your Honor. Mr. Mendez was

16   ordered detained at his initial presentment. The

17   government would ask that he remain in the custody of the

18   United States Marshals.

19        THE COURT: Mr. Smith, any application on that

20   point?

21        MR. SMITH: No, nothing further, Your Honor.

22        THE COURT: All right, thank you. Mr. Mendez is

23   ordered to remain in detention pending any further order

24   of the court.

25        MR. BOYLE: Thank you, Your Honor.

37

1    THE COURT: Thank you both. If there is nothing

2    further --

3    MR. SMITH: Nothing further, Your Honor. Thank

4    you.

5    THE COURT: We'll stand in recess.

6    (Whereupon the above matter was adjourned at 3:15

7    o'clock, P. M.)

C E R T I F I C A T E

I, Susan E. Catucci, RMR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

Susan E. Catucci, RMR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut 06604
Tel: (203) 246-6385