COPY

```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA           :  No. 3:02CR-274(SRU)
                                  :  915 Lafayette Boulevard
         vs.                       :  Bridgeport, Connecticut
                                  :
                                  :  October 23, 2003
JOSE ANIBAL MENDEZ                 :
                                  :
- - - - - - - - - - - - - - - - - x

                      SENTENCING


B E F O R E:

    THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.


A P P E A R A N C E S:

    FOR THE GOVERNMENT:

        OFFICE OF THE UNITED STATES ATTORNEY
            450 Main Street
            Hartford, Connecticut 06103
        BY: LEONARD C. BOYLE, AUSA

    FOR THE DEFENDANT:

        MATTHEW B. SMITH, ESQ.
            1206 Westminister Street
            Providence, Rhode Island 02909



                    Susan E. Catucci, RMR
                   Official Court Reporter
                  915 Lafayette Boulevard
               Bridgeport, Connecticut 06604
                    Tel: (203) 246-6385
```

EXHIBIT B

1

```
 1                    (3:10 O'CLOCK, P. M.)
 2              THE COURT:  Good afternoon.  We're here for
 3     sentencing in the matter of United States v. Jose Anibal
 4     Mendez.  Could I have appearances, please?
 5              MR. BOYLE:  Representing the government, Your
 6     Honor, Assistant United States Attorney, Leonard Boyle.
 7              MR. SMITH:  Good afternoon, Your Honor.  On
 8     behalf of Mr. Mendez, Matthew Smith.
 9              THE COURT:  Thank you.  The record should also
10     reflect that Vicki Stackpole of the U. S. Probation Office
11     is with us in court today, as is Virginia Saltzman, our
12     Interpreter.
13              THE INTERPRETER:  Good afternoon, Your Honor.
14              THE COURT:  Good afternoon, Ms. Saltzman.  Why
15     don't we start with you and ask you please to state your
16     qualifications for the record?
17              THE INTERPRETER:  Certainly.  I have a degree in
18     Spanish, I have worked as translater and interpreter, been
19     certified at the state level and also for immigration
20     court, and the majority of my work now is on the federal
21     level.
22              THE COURT:  All right, thank you.  And have you
23     had a chance to speak with Mr. Mendez today?
24              THE INTERPRETER:  Yes, briefly, Your Honor.
25              THE COURT:  And have the two of you had any
```

                                                              2

1  difficulty communicating with each other?
2           THE INTERPRETER: No, we have not.
3           THE COURT: Do you know of any other reason why
4  you could not fairly, justly and impartially translate
5  today's proceedings.
6           THE INTERPRETER: No, I don't, Your Honor.
7           THE COURT: All right, I'd ask that you be sworn
8  in please.
9           THE INTERPRETER: Thank you.
10          (Whereupon the Interpreter was duly sworn by the
11  Clerk.)
12          THE COURT: If at any time any of us get going
13  too fast that you can't keep up or Mr. Mendez is having
14  trouble understanding, please be sure and let me know and
15  well try and slow things down.
16          THE INTERPRETER: Thank you.
17          THE COURT: Thank you. On February 20th of this
18  year, Jose Anibal Mendez appeared before me and entered a
19  plea of guilty to Count Two of an indictment charging him
20  with possession with intent to distribute and distribution
21  of 5 grams or more of cocaine base in violation of 21,
22  United States Code, Section 841(a)(1). The court accepted
23  the plea and entered a finding of guilty based on the
24  plea. A presentence report was thereafter prepared for
25  the court by the U. S. probation office. The initial

3

1  report was dated April 21, 2003. I have reviewed that
2  report as well as the addendum to the report dated May
3  2nd, 2003 and I have spoken with Ms. Stackpole who is the
4  principal author of the PSR.
5      The only other material that I have reviewed in
6  preparation for sentencing is the Government's Memorandum
7  in Aid of Sentencing dated October 21, 2003.
8      Mr. Smith, have you and Mr. Mendez had a chance
9  to review the PSR and the addendum to the PSR?
10     MR. SMITH: Yes, we have, Your Honor.
11     THE COURT: And do you have any objections to
12 any of the factual statements set forth in the PSR?
13     MR. SMITH: No, we do not at this time, Your
14 Honor.
15     THE COURT: Thank you. Mr. Boyle, has the
16 government also had an opportunity to review those
17 documents?
18     MR. BOYLE: Yes, Your Honor, and we have no
19 objection.
20     THE COURT: Very good, thank you. I'm going to
21 adopt the factual statements of the PSR as the findings of
22 fact of the court in this matter. And I'm also going to
23 accept the plea agreement dated February 20th, 2003 and
24 filed that same day, being satisfied that the agreement
25 adequately reflects the seriousness of the actual offense

1  behavior and that accepting it will not undermine the
2  purposes of sentencing.
3       I want to turn now to the maximum punishment Mr.
4  Mendez faces. First, he faces a possible maximum of up to
5  40 years in prison, with a mandatory minimum of five
6  years; a fine of up to two million dollars; a term of
7  supervised release of at least four years up to life. And
8  should he violate any term or condition of supervised
9  release, he could be resentenced to up to three additional
10 years in prison. There is the forfeiture provisions of
11 the plea agreement that will no doubt be enforced and
12 there is a 100-dollar mandatory special assessment.
13      Do either of you have any corrections to that
14 statement of the maximum and minimum sentence in the case?
15      MR. BOYLE: No, Your Honor.
16      MR. SMITH: No, Your Honor.
17      THE COURT: All right, thank you. Let's turn
18 then to the Sentencing Guideline calculation. I'm not
19 aware of any argument that the Sentencing Guidelines have
20 been incorrectly calculated in the PSR, but if there is
21 such an argument, I'd like to hear it now.
22      MR. BOYLE: Your Honor, the government believes
23 that the guidelines have been correctly calculated and are
24 consistent with the parties' agreement.
25      MR. SMITH: I would give the same answer and

5

```
 1   concur with the government and the probation and the
 2   court, the guideline calculations are correct.
 3            THE COURT: All right. And both of you agree
 4   that the safety valve provision applies in this case?
 5            MR. BOYLE: Yes, Your Honor.
 6            MR. SMITH: Yes, Your Honor.
 7            THE COURT: All right, okay. In that event I
 8   agree as well that the Sentencing Guidelines have been
 9   correctly calculated here.
10            We start with a base offense level of 34, adjust
11   downward two levels for the safety valve, and adjust three
12   levels for acceptance of responsibility, which I grant,
13   leading to a total offense level of 29. With no prior
14   convictions, there's a criminal history category of one,
15   which leads to the following guideline sentencing range:
16   A period of incarceration of 87 to 108 months; a term of
17   supervised release of four to five years; a fine of 15,000
18   to two million dollars; and a mandatory special assessment
19   of $100. And I would note, well -- that's the sentencing
20   guideline range. Any corrections to that statement?
21            MR. BOYLE: No, Your Honor.
22            MR. SMITH: No, Your Honor.
23            THE COURT: All right. Mr. Smith, I'm not aware
24   of any downward departure issues but if there are any, I'd
25   like to hear about that, as well as I'll hear from you now
```

6

```
 1   with any argument you want to make about the appropriate
 2   sentence in this case.
 3           Mr. Mendez, I will hear from you should you wish
 4   to make a statement.  You are not required to make a
 5   statement but you have that right, and after your lawyer
 6   speaks I'd be happy to hear from you if you would like.
 7   At that point, I will then hear from the government.
 8           MR. SMITH:  Thank you, Your Honor.  I'm not
 9   aware of any downward departure provisions that would
10   apply other than that which has already been applied which
11   is the safety valve in this particular case.  I would urge
12   that the court do sentence Mr. Mendez at the low end of
13   the guideline; that is the 87 months.  I believe that that
14   sentencing range at the low end of the guidelines is
15   appropriate given his lack of a criminal history, his
16   forthrightness in accepting responsibility from the time
17   of his plea, as well as providing truthful statement of
18   acceptance of responsibility, being ready, willing and
19   able to be interviewed by the government regarding his
20   involvement in this case.
21           Quite honestly, Judge, he's already, as a result
22   of this conviction, suffered probably, probably -- I
23   probably shouldn't use the word suffered -- he will, as a
24   consequence of his actions, in all likelihood, unless the
25   world drastically changes as I know it, forfeit his right
```

7

```
 1   to be here in this country as a result of this plea and
 2   conviction, so I'm asking the court to sentence him to the
 3   87 months.
 4            I leave it to the court's discretion as to the
 5   term of probation, whether it be four or five years.
 6            I don't believe he have has any identifiable
 7   assets, Judge, so I urge the court not to impose a fine.
 8            Obviously if the court has to impose the hundred
 9   dollar special assessment, he would be able to raise that
10   from his family to pay that to the court.
11            And I know in my discussions with Mr. Mendez
12   that no one is more aware than he what his actions have
13   forced upon him, forced and placed upon his family, the
14   consequences for him which is certain deportation upon his
15   completion of whatever sentence the court imposes.
16            So in that vein, Judge, that's what I would ask
17   the court to sentence Mr. Mendez to.  I don't know whether
18   he wants to address the court or not, but I certainly made
19   him aware he can address if he should so choose.
20            THE COURT:  All right.  Mr. Mendez, would you
21   like to make any statement today?
22            MR. SMITH:  One other thing, Your Honor.  I
23   would ask the court as a condition of sentencing, Your
24   Honor, that in light of his marijuana use, that the court
25   at least recommend some type of a drug program for him to
```

1   address that marijuana use, if at all possible.
2       Further, Judge, he did ask me to ask the court
3   to have him sentenced in Massachusetts at Fort Devins as a
4   recommendation. Given my knowledge of the type of prison
5   population at Fort Devins, I don't know whether that's
6   feasible or not, or in the alternative I would ask for the
7   Fort Dix facility, in the metropolitan New York area to
8   enable his family to visit him.
9       THE COURT: Where is his family located?
10      MR. SMITH: Massachusetts, Judge. Thank you.
11      THE COURT: Mr. Mendez, did you want to say
12  anything today?
13      THE INTERPRETER: What type of a statement?
14      THE COURT: That's up to you, sir. If you want
15  to make any statement for me to consider before I sentence
16  you, that's your right.
17      (Defendant conferring with Counsel.)
18      THE INTERPRETER: I'd like to say I'm very sorry
19  for what I've done. I'm truly sorry about it. I know
20  what it is that I've done and I'm not going to commit that
21  type of thing again.
22      THE COURT: Thank you.
23      THE INTERPRETER: And, again, I'm very sorry
24  for -- I apologize for what I've done.
25      THE COURT: Thank you. Mr. Boyle?

9

1     MR. BOYLE: Your Honor, the government is
2  comfortable with any sentence that the court deems
3  appropriate within the applicable guideline range. Thank
4  you.
5     THE COURT: All right, thank you. Mr. Mendez,
6  I'm required to consider any number of factors under the
7  statutes when imposing a sentence and I'm not going to go
8  through each of those factors with you now. Rather, I'm
9  just going to speak to the points that I think are most
10 important in my decision today and they were emphasized by
11 your lawyer. First, this is your first conviction which I
12 think is significant. This is a relatively high guideline
13 range for a first conviction and that reflects, I think,
14 the very high guideline range for distribution of crack
15 cocaine. You are going to suffer a severe collateral
16 consequence of this conviction which is your deportation
17 from the United States, which obviously is not part of the
18 punishment here but is a consideration in my decision
19 where within the range to sentence you. I don't see any
20 real point in incarcerating you any longer than necessary
21 in this country when you face certain deportation from the
22 United States once you finish your sentence. And
23 basically for those reasons, it is my intention to
24 sentence you as follows:
25    First, to a period of incarceration of 87

1  months, to be followed by a period of supervised release
2  of four years.
3           And during supervised release, the mandatory
4  conditions of supervised release set forth in Guideline
5  Section 5d1.3(a)(1), two, four and (6)(b) shall apply, as
6  shall the standard conditions of supervised release set
7  forth in policy statement at Guideline Section 5d1.3c.
8           In addition, there is one special condition of
9  supervised release and that is in the event that you are
10 deported, you shall not reenter the United States without
11 the prior written approval of the Attorney General of the
12 United States and notification to U. S. Attorney's Office
13 and the U. S. Probation Office for the District of
14 Connecticut. If you should violate any term or condition
15 of supervised release, you could be brought back into
16 court and resentenced to up to three additional years
17 imprisonment. So it's important that you understand and
18 comply with each of those conditions during the period of
19 your supervised release.
20          I'm going to waive a fine in this case based
21 upon my finding that the defendant cannot pay a fine
22 within the guideline range.
23          I'm required to order that you pay a mandatory
24 special assessment of $100.
25          And I am going to recommend that you receive

11

```
 1   appropriate substance abuse treatment while incarcerated
 2   and that you be assigned to a facility as close as
 3   possible to the State of Massachusetts consistent with
 4   your classification by the Bureau of Prisons so that your
 5   family can visit you if possible.
 6            MR. SMITH: Thank you, Your Honor.
 7            THE COURT: Let me hear from counsel if there's
 8   any reason that the sentence I just outlined should not be
 9   imposed as the sentence of the court.
10            MR. BOYLE: No, Your Honor.
11            MR. SMITH: No, Your Honor.
12            THE COURT: Okay. Mr. Mendez, the sentence that
13   I just described is hereby imposed as the sentence of the
14   court in your case. The judgment of the court will be
15   prepared for my signature by the Clerk's Office in
16   consultation with the U. S. Probation Office.
17            I'm required to inform you that you have the
18   right to appeal your sentence. You reserved that right in
19   your plea agreement and it's important that you understand
20   two things. First, if you wish to appeal your sentence,
21   you must file a Notice of Appeal within ten days, and if
22   you fail to do that, then you will lose your right to
23   appeal, and that ten days begins to run with the entry of
24   the judgment in this case. Do you understand the time
25   limit on your right to appeal?
```

12

```
 1              THE INTERPRETER:  Yes.
 2              THE COURT:  And, second, if you wish to appeal
 3    but you cannot afford to do so, you can file a motion with
 4    the court to proceed in forma pauperis, and if that motion
 5    is granted, then the filing fees will be waived and the
 6    court will appoint counsel to handle your appeal at no
 7    cost to you.  Do you understand?
 8              THE INTERPRETER:  Yes.
 9              THE COURT:  Is there any need to formally
10    address the question of forfeiture that was addressed in
11    the plea agreement?
12              MR. BOYLE:  No, Your Honor.  I believe that that
13    matter's already in process as a result of Mr. Polanco's
14    sentencing.
15              THE COURT:  All right.  And does the government
16    have a motion with respect to the other --
17              MR. BOYLE:  Yes, Your Honor.  If I may, I'll
18    hand to the clerk a motion to dismiss Counts One, Three
19    and Four of the indictment.
20              THE COURT:  Thank you.  And that motion's
21    granted.
22              MR. BOYLE:  Thank you.
23              THE COURT:  Are there other matters that we need
24    to take up today?
25              MR. BOYLE:  I don't believe so, Your Honor.
```

13

1  MR. SMITH: Nothing from here, Your Honor.
2  Thank you.
3    THE COURT: All right, thank you both.
4  Mr. Mendez, best of luck to you.
5    We will stand adjourned.
6    (Whereupon the above matter was adjourned at 3:30
7  o'clock, P. M.)

C E R T I F I C A T E

I, Susan E. Catucci, RMR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

*[signature]*

Susan E. Catucci, RMR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut 06604
Tel: (203) 246-6385