UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSE ANIBAL MENDEZ,
   Petitioner

   v.                                                NO. 3:02CR274(SRU)
                                                     NO. 3:04CV1228(SRU)
UNITED STATES,
   Respondent

**AFFIDAVIT**

MATTHEW B. SMITH, having been duly sworn, does hereby depose and say:

1. I have been a licensed attorney for approximately (16) years and am admitted to practice before the following courts: Rhode Island Supreme Court; Federal District Court for the Districts of Rhode Island, Massachusetts, New Jersey and the Eastern District of Wisconsin.

2. I was retained by Jose Anibal Mendez to represent him in the criminal case known as United States v. Jose Anibal Mendez and Manuel Polanco, criminal docket number 3:02CR274(SCU). In the indictment returned against Mr. Mendez in that case, he was charged with three counts of Possession with Intent to Distribute and Distribution of Cocaine Base and one count of Conspiracy to Possess with Intent to Distribute Cocaine base.

3. As Mr. Mendez's retained counsel, I negotiated a resolution of the case which permitted Mr. Mendez to plead to a single count of the indictment (Count Two). As a result of this negotiated plea, Mr. Mendez faced a mandatory minimum sentence of 5 years in prison (and up to 40 years) as opposed to the mandatory minimum sentence of 10 years in prison and up to life imprisonment which would have resulted from a conviction on any one or more of the remain counts (that is, on Counts One, Three and/or Four).

4. On February 20, 2003, after a thorough canvas of the defendant by the Court (Underhill, J.), Mr. Mendez pleaded guilty to Count Two of the indictment. On October 23, 2003, Mr. Mendez was sentences to a term of 87 months imprisonment to be followed by four years of supervised release.

5. I have read the *pro se* Motion Under 28 USC § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by Mr. Mendez on or about July 21, 2004 in which Mr. Mendez alleges that he received ineffective representation by me. Further, Mr. Mendez alleges that he was lied to by me concerning various matters relating to his plea and sentencing. Mr. Mendez's allegations are untrue.

6. On page 8 of his motion, Mr. Mendez states, "To add the drug weights to the Petitioner from the counts that were dismissed by the government [Counts One, Three and Four] was wrong in this case. The Petitioner's attorney of record Matthew B. Smith was ineffective for not objecting to this tactical maneuver by the A.U.S.A. in this case . . . ." In truth, no objection to the drug quantity was raised because the Defendant, through counsel, voluntarily entered into an agreed upon factual stipulation as to the quantity of narcotics that formed the basis for his applicable sentencing guideline and applicable relevant conduct.

7. Also on page 8 of the motion, Mr. Mendez alleges that "Jose Anibal Mendez truly was led to believe that he was specifically pleading to 9.9 grams of crack cocaine. Mr. Mendez was led astray by his attorney and lied to. As a matter of fact he was tricked into signing the plea agreement with the stipulation of added drug weight from counts already dismissed. This is truly cause and prejudice shown." In truth, Mr. Mendez was not lied to or mislead by me. In my discussions with Mr. Mendez that lead to his guilty plea, I specifically discussed the facts of his case with him and advised him, with the assistance of an interpreter, that he would voluntarily

sign and enter into a factual stipulation that established the amount of crack cocaine he would be held responsible for (307.9 grams). Mr. Mendez, after being so advised, voluntarily signed the agreed upon stipulation.

8. On page 9 of his petition, Mr. Mendez alleges that, "Mr. Smith lied to Petitioner. He told the Petitioner that he would receive 60 months then after the deduction of 3 points for acceptance of responsibility and the safety valve for criminal history I is another 2 points to a level 21, 37 to 46 months. This is truly ineffective assistance of counsel." In truth, Mr. Mendez was never told that his guideline range would be 37 to 46 months. Rather, I advised Mr. Mendez that his guideline calculation would fall somewhere between level 28 and level 30 of the sentencing guidelines.

9. On page 10 of the motion, Mr. Mendez asserts that he was not given the benefit of the so-called "safety value" downward adjustment. In truth, as reflected in paragraph 15 of the Presentence Report, he did receive a 2-point downward adjustment pursuant to U.S.S.G. § 5C1.2 and 18 U.S.C. §3553(f)(1)(1)-(5).

10. On page 11 of the motion, Mr. Mendez states that, "The Petitioner was never told about Exhibit (B) [attached to his submission] the tactical maneuver applied by the government that Mr. Smith made no objection to." While I cannot say with certainty that I ever showed Mr. Mendez the December 29, 2002 facsimile cover sheet to the draft plea agreement letter, as noted during the plea and sentencing proceedings, Mr. Mendez's first language is Spanish and he does not read or write English. While I do not recall whether I did show him "Exhibit (B)", I can say that with respect to the substance of the information contained on Exhibit (B), Mr. Mendez was specifically told that his guideline calculation would be based upon the total amount of crack cocaine (307.9 grams) contained in the discovery provided by the Government and as detailed in

the factual stipulation voluntarily signed and entered into between Mr. Mendez and the Government. Again, the stipulation was translated for Mr. Mendez by an interpreter prior to Mr. Mendez signing the stipulation.

11. Also on page 11, Mr. Mendez states that, "This truly was deceit on the part of Mr. Smith, a violation of the laws and Constitution of the United States of America, the 6th, 5th, 14th and 1st Amendment rights. The Petitioner says 1st Amendment because it was his right to have an appeal and certiorari filed by his attorney of record." With respect to the question of Mr. Mendez pursuing an appeal in his case, I discussed the merits of such an appeal with him. In particular, at the time he was sentenced, Mr. Mendez was extremely satisfied with the sentence he received. In fact, immediately after his sentencing, I discussed with him, through an interpreter, whether he wished to file an appeal. Mr. Mendez indicated to me through the interpreter that he did not wish to appeal his sentence. Prior to his latest filing with the Honorable Court, Mr. Mendez never indicated to me either verbally or in any written correspondence that he wished to appeal his sentence.

12. On page 11 of the motion, Mr. Mendez alleges that with respect to the Stipulation of Offense Conduct, which was part of the plea agreement, "the record and exhibits in this case shows that appellant never saw what the relevant conduct stipulation was in the case 307.9 grams. This is not the offense level that the Petitioner thought he was pleading to. <u>See</u> exhibit (A) #14. This section of the PSI or the PSI period was never put before the [the next page is missing, but the sentence would appear to conclude with the words "the Petitioner"]. With respect to Mr. Mendez's claim that the stipulation was never put before him, this assertion is patently false as evidenced by the fact that he signed the stipulation. Further, it is my recollection that the Court inquired about the stipulation during the guilty plea proceedings. As to the broader

suggestion that Mr. Mendez was never told how the Sentencing guidelines would work in his case, in fact, I explained on several occasions to Mr. Mendez that, again, it was my opinion, provided he secured a two-point downward departure (which he did), that his offense level would fall between level 28 and level 30 of the sentencing guidelines.

13.  I believe that I provided Mr. Mendez with effective representation in his case. Clearly, Mr. Mendez faced significantly more time to serve than the time he actually received for his sentence. While it is true that I did not raise objections to matters which I thought were properly calculated in the Presentence Report, as a tactical matter, the issues raised by Mr. Mendez in his latest filing with the Honorable Court are moot because the agreed upon factual stipulation voluntarily entered into by Mr. Mendez obviated the need to raise the objections he now lists in his pleading with the Honorable Court.

_____
MATTHEW B. SMITH
Counsel for Jose Anibal Mendez

Sworn to before me
This ___ day of March 2005.

_____
Notary Public