APR 2 2 2005

APR 1 1 2005

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

# FILED

2005 APR 28  P 12: 07

U.S. DISTRICT COURT
BRIDGEPORT, CONN

JOSE   AMIBAL MENDEZ,                PLAINTIFF,

                        vs:

UNITED STATES OF AMERICA,            RESPONDENT.


Criminal No.   3:02-274-(SRU)

Civil No. 3:04-1228-(SRU)


PETITIONER'S RESPONSE TO THE GOVERNMENT
MOTION IN OPPOSITION TO PETITIONER'S
MOTION TO VACATE SENTENCE PURSUANT TO 28 USC §§ 2255


COMES NOW THE PETITIONER in response to the
Government.  The Petitioner apprises The Court of the Fact
That The Government has failed miserably in response to the
Petitioner and the Justice Department is truly misleading
The Court.  The Reasons  Are Stated Within:

1.            The Petitioner will address the Government
Or Justice Department's responses in alphabetical order.

C.            The Plea Hearing page 5 of the Government's
Response.

The Petitioner asserts that the Plea agreement

speaks for itself in this situation before the Court. See
Exhibit (C) of original memorandum of law and fact. The
Petitioner never agreed to the 307.9 grams of crack cocaine
used to boost the offense level to 34.

The Petitioner next directs the Court's attention
toward Exhibit (B) facsimile transmission from Leonard C. Boyle,
Assistant United States Attorney to Mathew B. Smith, dated
December 29, 2002.

This is proof beyond a shadow of a doubt that the
Count plead guilty to by the Petitioner Mendez, Count 2 carries
a minimum of 5 years in prison. This by The Assistant United
States Attorney's own admission. Counts One, Three, and  Four
were dropped by The Justice Department in a nutshell. The
Petitioner never say or discussed this tactical maneuver on
the part of the Assistant United States Attorney with his
Attorney of record, Mr. Smith. Attorney Smith admits this
in his affidavit to the Assistant United States Attorney at
response # 10. The Petitioner quotes Mr. Smith, While I
can not say with certainty that I ever showed Mr. Mendez the
December 29, 2002, facsimile Cover sheet to the draft plea
agreement. The Petitioner will not belabor  the entire
statement by Mr. Smith, it's not necessary. The Petitioner
asserts that if Mr. Smith never showed the Petitioner the
tactical maneuver of dropping counts, then adding them back
was ever discussed with the Petitioner by Counselor. The
Petitioner asserts that Mr. Smith was Mr. Mendez's Counsel

- 2 -

of record who did not do his job.  The Petitioner was entitled
to do his job.  The Petitioner was entitled to the benefit of the
plea also specific performance, see original memorandum of
law and fact on this issue page 7, 8, 9, 10, and 11.  The
Petitioner asserts that the offense of conviction the jury
verdict or what a defendant admits to controls the sentence.
The Justice Department knows this but is still trying to deny
The Petitioner.   For 20 years the aforementioned tactical
maneuvers were common practice in the Federal System.  The
guidelines have the force and affects of laws.  The Guideline
calculation is the statutory maximum, 5 grams or more of
cocaine base is 841(b)(1)(b)!!!  5 years period in a nutshell.
Specific performance is preferred rather than the withdrawal
of the plea agreement.  Moreover, the choice for remedy rests
with the Court not with the defendant.  Kingsley, 968 F.2d at
113, Canada, 960 F.2d at 271.  The Petitioner has pointed
to actual ineffectiveness that truly prejudiced The Petitioner
Mendez through specific errors and/or omissions of Counsel
and has not relied solely on surrounding circumstances in
order to establish ineffective assistance.  See letter dated
November 5, 2003, by Leonard C. Boyle to Matthew B. Smith,
Exhibit (F) of original memorandum of law and fact.  The
Petitioner asked the Court a question.  If Mr. Mendez was

- 3 -

so satisfied with the plea, the sentence and truly understood
what was happening, why is Mr. Boyle writing to Mr. Smith
on behalf of the Petitioner Mendez expressing Mr. Mendez's
concerns.  Because Mr. Mendez writes the United States
Attorney and screams bloody murder about what Mr. Smith
has done to the Petitioner and wants to appeal.  Also See,
Exhibit (D) Letter Of Petitioner expressing his feelings.  The
Assistant United States Attorney in question never mentions
the exhibits of the Petitioner A through G.  Why?

The Petitioner asserts because the record is
fact thats why the record doesn't lie.  The Assistant United
States Attorney is truly misleading the Court.   Mr. Mendez
trusted Mr. Smith the Plea said one Count the other Counts
will be dropped.

The Government even admits this in Exhibit (B) a five
years mandatory minimum is mentioned plus the tactical
maneuver.

The Petitioner respectfully ask the Court not
to condone this ineffectiveness.  It's very touching  that
The Assistant United States Attorney and the previous Counsel
now despite the exhibits are taking up for each other to try
and deny the Petitioner.

      2.      D.    THE SENTENCING HEARING:

The Petitioner asserts that the sentencing transcripts
do not state anywhere by the Court that Petitioner was being

sentenced to relevant conduct over the plea agreement. TR.
10/23/03 at 10-11 states nothing of the kind. Count One, Three,
and Four were dropped. The Pre-Sentencing Officer comes in
after the plea has been established with extra drugs elements
of the offense. United States vs: Booker, 534 U.S._____
160 Led.2d 621, 125 S.Ct 2005 forbids this type of activity and
conduct on the part of the Assistant United States Attorney,
The Pre-Sentencing Officer and The Court. The Petitioner
had a right to be protected by his Counsel under the Sixth
Amendment. It did no good for the Petitioner to plead guilty if
there was no benefit in the bargain for Petitioner. Specific
performance is desired by the Petitioner. The Petitioner does
not speak English at all and is not an Attorney practicing
for 16 years.

       The sentencing hearing are par for the course.
Petitioner's are told by their Attorneys just say yes, don't
make the Judge mad, you will get the sentence which I told
you would get for pleading guilty to one Count. The Court
goes through the rudimentary motions expressed by the Assistant
United States Attorney in its response in opposition. But the
fact still remains that no one told the Petitioner that he was
going to be sentenced to relevant conduct to 3 charges that were
dropped. Deception is a terrible thing that exactly waht
the Assistant United States Attorney is doing in response.

- 5 -

No where in the transcripts doe it say the Petitioner would be sentenced to 307.9 grams.

The Petitioner next will address the  issue of the Appeal Process that is a Constitutionally guaranteed right. The assertions by the Assistant United States Attorney in this case are disingenuous.

The Supreme Court says the Petitioner has a right to Appeal an Effective Assistance On Appeal.  The Petitioner asserts who is right, The Supreme Court and The Constitution or The Assistant United States Attorney.  Deception is a terrible thing to use to try and resist and deny a Petitioner.

SEE  Anders vs: California, 386 U.S. 738 (1967) Stating that the Sixth Amendment Right to Counsel obligates theAttorney to file the Appeal and identify possible issues for the Court even if in the Attorney's opinion, these issues are not meritorious.  See Penson vs: Ohio, supra, 488 U.S. at 88, quoting Strickland vs: Washington,  466 U.S. at 692 (1984), holding that the actual or Constructive denial of Assistance Of Counsel altogether in a first  appeal as of right is Constitutional Error.

The Petitioner once again directs the Court's attention to the exhibits that are a part of the record in this case.  See Exhibit (F) Assistant United States Attorney Boyles letter to Mr. Smith.  The Petitioner wanted an appeal Notice filed.  Mr. Smith chose not to answer any of the  defendant's

- 6 -

phone calls or correspondence after Mr. Smith mislead the
Petitioner to plea Guilty to relevant conduct which is truly
a Sixth Amendment Violation, denial of a right to trial by jury.
Mr. Smith in his affidavit outright lied about Petitioner not
wanting to appeal. Exhibit (F) apart of the record is plain,
The Assistant United States Attorney writes Mr. Smith and tell
him your client is displeased with the sentence that was imposed
by The Court and states his intentions to appeal. The Petitioner
asserts at this time when is it time to say enough is enough. The
injustice that have occurred over the last twenty (20) years
have directly violated The Constitution of The United States.
The Petitioner has shown through clear and convincing evidence
now and in the initial 28 USC §§ 2255 that Mr. Smith was truly
ineffective. The Honorable Court can not ignore the record
in this case the "Exhibits"  thats the key here. Not deception
on part of the Assistant United States Attorney or lies by Mr.
Smith. The Petitioner has a right to appeal it is a shame under
The Sixth Amendment Right to effective Assistance that Petitioner
had to contact  his Chief Adversary  about the Appeal Process
because Mr. Smith turned his back on Mr. Mendez. See  Becton
vs: Bernett,  920 F.2d 1190 at 1195 (Fourth Cir. 1990), stating
that "the effect of counsel's failure to appeal was that the
defendant lost his ability to protect his vital interest at
stake. See  Evitts vs: Lucy, 469 U.S. 387 at 396, 105S.Ct. (1985).

- 7 -

He was unable to demonstrate that his conviction was unlawful through the Appellate Process.

For whatever reason, The defendant's Appeal was not filed. As a result the defendant might well have been prejudiced by his counsel's ineffective assistance. Therefore, the defendant has presented a colorable claim for ineffectiveness based on counsel's failure to appeal. "See United Stgates vs: Peak, 992 F.2d 39, 42 (4th Cir. 1993) stating that: "..........Strickland is concerned with Attorney performance in the course of representation.

By its own text it does not apply to deprivation of Counsel altogether, which violate the Sixth Amendment without the need for even the most elementary judicial interpretation. No one would seriously contend that a defendant need not have an Attorney at trial if there is no "reasonable probability that an attorney could win an acquittal.

We see no reason to apply a different rule on direct appeal, where the defendant has the same absolute right to counsel he enjoys before conviction. The Petitioner asserts that the Government or Justice Department half heartedly suggest that the Petitioner didn't make mention of the fact he was told he would receive a 36 to 47 month sentence. The reason for this is Petitioner was receiving a message from the Court in English then it was interpreted by a translator. The Petitioner had no

- 8 -

understanding of months vs: years of confinement  until later on.
That's when Petitioner could not get Mr. Smith to return his
calls or his family's.  Mr. Smith would not even correspond
back to the Petitioner in writing look at the exhibits,
Exhibit (E) Mendez's Letter to Leonard C. Boyle, about Mr.
Smith's representations.  Look at Exhibit (F), Mr. Boyles'
Letter to Mr. Smith, this is factually based.  These assertions
are not made up, they are factual.  The Petitioner has a right to
relief.  Specific performance of the plea and the benefit of
the plea.  The Government Or Justice Department can not have it
both ways, dropping Counts, then adding them back on the
Sentencing in the form of Relevant Conduct.  It's misrepresentation
in its highest form of deception.

        The Petitioner will not respond to the discussion
section starting on page 14 ending on page 27.  The discussion
part of the Government Or The United States Justice Department's
response does not deserve an answer.  The Petitioner has already
answered this part hereinbefore.  Mr. Smith was ineffective
period.  The Petitioner entered a Plea Of Guilty to Five Grams
[5-grams]  of Crack Cocaine period in a nutshell, which carries
a five years sentence deduct For Acceptance Of Responsibility,
3 Points, 36 to 47 Months.

        Under the Constitution the Applicable Law The Petitioner
is right on this one, and all Petitioner wants is to be sentenced
fairly not for his plea to be taken away.  Benefit of the Plea

- 9 -

Bargain, Specific performance.   Petitioner directs the Court's
attention back to the Original Memorandum of Law and Fact and
Exhibits.   The Petitioner respectfully submits This Additional
Argument under Booker's Retroactivity.

## RETROACTIVITY UNDER BOOKER

Retroactivity for no-final cases still on direct
review is no problem, as the Booker Court so stated relying on
Griffith vs: Kentucky, 479 U.S. 314, 328, 93 L.Ed.2d 649, 661,
107 S.Ct. 708 (1987), Booker, Breyer. J. , Slip Opinion, pg. 25.

Nor is it a serious problem for initial habeas corpus
petitioners.  Schriro vs: Summerlin, 542 U.S.____, 159 L.Ed 2d 442,
124 S.Ct. 2519 (2004) provides compelling support for Booker's
retroactivity to initial habeas corpus cases.   Although the
Supreme Court in Summberlin rejected retroactivity of it new
procedureal rule announced in Ring vs: Arizona, 536 U.S. 584,
153 L.Ed. 2d 556, 122 S.Ct. 2428 (2002) (holding a jury, not
a judge, must make the findings necessary to impose the death
penalty), it did so because the possibility of inaccuracy was
minimal in that both fact finders they were required to use
the same beyond a reasonable doubt standard.  Pre-Booker, on
the other hand, judges determined sentence - enhancements facts
by preponderance of the evidence.  **Post-Booker**, those facts
must be both determined by a jury and proved beyond a resonable

doubt.

Accordingly, **Pre-Booker**, the fact finding process so
"seriously diminse[d] accuracy as to produced an "impermissibly
large risk" of justice.  **Summerlin**, 159 L.Ed 2d at 451.
(Emphasis original).  The Booker rule which remedied that
risk is therefore very likely exempt from The **Teague vs: Lane,**
489 U.S. 288, 103 L.Ed 2d 334, 109 S.Ct. 1060 (1989)
retroactivity bar under the whatershed rule of criminal procedure
exception.  See, e.g. **In re Winship**, 397 U.S. 358, 25 L.Ed. 2d
368, 90 S.Ct 1068 (1970); cf. **Ring vs: Arizona,**  538 U.S. 584,
discussed in Summerlin.

Booker invalidated the Guidelines both on a Sixth Amendment
jury trial violation as well as the A**pprendi vs; New Jersey**, 530
U.S. 466, 147 L.Ed. 2d 435, 120 S.Ct. 2348 (2000) due process
doctrine.  Jointly, those basis compel retroactivity.  See e.g.,
**In re Winship**, 397 U.S. 358; **Ring vs; Arizona,** 536 U.S. 584;
See Also, **United States vs; hernandez**, 137 S.Supp. 2d 919, 931-32
(N.D. Ohio 2001) rev'd in **United States vs: Luciano**, 311 F.3d
146 (2nd Cir. 2002); and **United States vs: Marphy**, 109 F.Supp.
1059, 1064 (D.Minn. 2000) rev'd in **Murphy vs: United States,**
268 F.3d 599 (8th Cir. 2001).

Therefore, **Summerlin's** reliance on **Destefano vs: Woods,**
392 U.S. 631, 20 L.Ed 2d 1308, 88 S.Ct. 2093 (1968)(per Curium)
refusing to give retroactive effect to **Duncan vs: Louisiana,** 391
U.S. 145, 20 Led 491, 88 S.Ct. (1968) (applying Sixth

Amendment jury trial guarantee to the states) to reject
retroactivity is inconsequential to Booker's retroactivity.
In **Destephano**, like **Summerlin**, the fact finding standard on
which retroactivity was claimed was the same, only the fact
finder differed.  **Booker** changed those standards exactly as
did **In re Winship**, 397 U.S. at 363-64, 25 L.Ed 2d at 35
(requiring juvenile charges be proved by a reasonable standard
instead of preponderance reasoning the reasonable doubt standard
"is prime instrument for reducing the risk of convictions resting
on factual error.  The standard provides concrete substance
for the presumption of innocence - that bedrock "axiomatic
and elementary" principle whose "enforcement lies at the foundation
of the administration of our criminal law").  Because the foundation
of **Booker's** new rule of Constitutional Law rest on both the
**Apprendi** due process doctrine and the **In re Winship** Sixth
Amendment Right to Jury Trial with respective beyond a reasonable
doubt proof standards, retroactivity to initial habeas petitions
should present no great problem.

Retroactivity for purposes of second or successive
federal habeas corpus requires retroactivity be made by the
Supreme Court.  **Tyler vs: Cain**, 533 U.S. 656, 150 L.Ed 2d 632,
121 S.Ct. 2478 (2001).  According to **Tyler vs: Cain**, The
Supreme Court can make new rules retroactive (1) by declaration,
(2) by application of the rule to a habeas case (id., 533 U.S.
at 665, 150 L.Ed 2d at 645), or (3) through multiple holdings
which "necessarily dictate retroactivity of the new rule []"

- 12 -

id., 533 U.S. at 688-70, 150 L.Ed. 2d at 646-47 (O'Connor, J., concurring). **Booker** has arguably made its new rule retroactive in all thee ways plus three more.

First, **Booker** specifically declared "both the Sixth Amendment holding and [its] remedial interpretation of the of the sentencing Act [retroactive] to all cases on direct review." Breyer, J., Slip Opinion at 25. Instead of limiting retroactivity only to cases on direct review, like Mr. Booker's and Mr. Fan Fan's by that statement the Supreme Court more likely made **Booker** retroactive to all cases. This is so because Booker's Sixth Amendment new rule simply "reaffirmed [its] holding in **Apprendi** [that] [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a Jury beyond a reasonable doubt." ID., **Stevens,** J., Slip Opinion at 20. That rule is but a magnification of its **In re Winship, 397 U.S. 358,** 25 L.Ed. 2d 368 rule "that The Constitution protects every criminal defendant 'against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." **Booker,** Sevens, J. , Slip Opinion at 5. **In Ivan vs: City Of New York,** 407 U.S. 203, 205, 32 L.Ed 2d 569, 661- 662, 92 S.Xt. 1951 (1972) (per curium). The Supreme Court declared **In re Winship** must "be given complete retroactive effect." **Ivan V.** was also a direct appeal case like **Booker.**

- 13 -

However, The Supreme Court's declaration left no doubt its retroactivity declaration meant retroactivity to all cases, final or otherwise.  Proof of it is in the several habeas cases in which The Supreme Court subsequently applied variations of its in re **Winship** rule, See, e.g. **Yate vs. Evatt,** 500 U.S. 391,  114 L.Ed. 2d 432  111 S.Ct. 1184 (1991) (applying rule in **Sanstrom vs: Montana,**  422 U.S. 510, 61 L.Ed. 2d 39, 99 S.Ct. 2450 (1979)), that jury instructions on malice or intent violated due process by relieving the states burden of proving every element beyond a reasonable doubt as required by **In re Winship: Francis vs: Franklin,** 471 U.S. 307, 85 L.Ed. 2d1 344, 105 S.Ct.  1965 (1985) (applying **Sandstorm vs: Montana,** 422 U.S.  510 in burden shifting instruction in violation of **In Re Winship** principle): **Jackson vs: Virginia,**  443 U.S. 307,  61 L.Ed 2d 560, 99 S.Ct. 2781 (1979) (applying in re **Re Winship**  rule to insufficiency of evidence standards of review in federal habeas corpus proceedings).

Second, by so applying the **In Re Winship** - type rule to mulviplr habeas cases, The Supreme Court has arguably also de facto applied its **Booker** Constitutional rule through those past cases.  If Booker and **In Re Winship** are rules of the same type application of the other thus making both retroactive under **Tyler vs: Cain's** application retroactivity method.  Id. 533 U.S. at 665, 150 L.Ed. 2d at 645.  But cf. **In re Turner,** 267 F.3d 225 (3rd Cir. 2001) (rejecting same

- 14 -

argument as to **Apprendi**).

      Third, it is similarily possible The Supreme Court
has made its multiple holdings because it held in "Case One
[**Ivan V.**   407 U.S. at 205,  32 L.Ed. 2d at 662-662 that [the
In re **Winship**]] type rule applies retroactively to case on
collateral review adn [held] in Cases Two [Booker] that [its]
rule  is of that particular type, then it necessarily follows
that the [Booker] rule applies retroactively to cases on
collateral review."  Tyler vs: Cain,  533 U.S. at 668-669,
150 L.Ed 2d at 646  (O'Connor concurring).  But cf. In re
Turner,  267 F.3d 225, (rejecting same argument as to Apprendi).

      Fourth, Booker has arguably made its rules retroactive
through its guideline clarifying amendments.  It is well  esta-
blished Guideline clarifying amendments are retroactive.  See,
e.g. United States vs: Garcia-Cruz, 40 F.3d 986, 990 (9th Cir.
1994)) ("Under the law of our Circuit, amendments to the Sentencing
Guidelines which are 'clarifying' as opposed to 'substantive'
may be given retroactive effect");  See Also, United States
vs: Stinson,  30 F.3d 121, 122 (11th Cir. 1994)(per curium)
(collecting cases).  Booker made no substantive changes to the
guidelines.  It merely interpreted them (Breyer, J., Slip Opinion,
pg. 25) (our remedial interpretation of the Sentencing  Act)
advisory as "'Congress would have intended"' (id. pg. 2) had
it know its mandatory  provision violated the Sixth Amendment.

Right to a Jury Trial.  See also, id., pg. 22.  ("Hence we have examined the statute in depth to determine Congress' likely intent in light of today's holding.") (emphasis original).

Booker's amendment accordingly merely clarified Congress' intent in light of its Sixth Amendment holding. Had Booker "superimpos[ed] its [Sixth Amendment] constitutional requirement announced [therein]" (id., pg. 3) by "engrafting the Court's Constitutional Requirement onto the Sentencing Statutes, [it] would have substantively] destry[ed] the system []" (id., pg 9).  Such substantive change would have produced unintended punishment for different degrees of similar crimes (id) and vise-versa )id., pg 10) thus destrying Congress' goal of sentence uniformity (id.).

Because The Booker sentencing Reform Act amendments did not change the guidelines substantively but merely interpreted them as advisory instead of mandatory, such amendment is only a clarifying amendment necessarily retroactive.  Booker's additional amendment to the sentencing appellate process changed nothing substantively.  It only clarified the Stand Of Review Congress would have preferred in light of its Sixth Amendment holding.  Retroactivity of such changes in the post conviction process is hardly a problem, See, e.g. Collins vs: Youngblood, 497 U.S. 37, 111 L.Ed 2d 30, 110 S.Ct. 2715 (1990)(Stevens, J., concurring).

- 16 -

Fifth, by remedially severing and excising parts
of the Federal Sentencing Act of 1984, asking to legislate
(see, e.g., Freeborn vs: Smith, 69 U.S. 160, 168,   17 L.
Ed  922, 175, 2 Wall 160 (1865), The Supreme Court in Booker
modified the Federal Sentencing Guidelines nunc pro tunc to
their November 1, 1987 effective date:

> We Answer the question of remedy by finding
> the provision of the federal Sentencing
> Statutes that makes the Guidelines mandatory,
> 18 U.S.C.A. §§ 3553(b)(1)(Supp. 2004),
> incompatible with today's constitution holding.
> We conclude that this provision must be
> severed and excised, as must one other Statutory
> section §§ 3742(e) (Main ed. and Supp. 2004),
> depends upon the Guidelines mandatory nature.
> So modified, the Federal Sentencing Reforms Act
> pf 1984, as amended, 18 U.S.C. §§ et. seq.,
> 28 U.S.C. §§ 991 et. seq., makes the
> guidelines effectively advisory.  Booker,
> Breyor, J., Slip Opinion, pg. 2.

Congress' power  to make or amend remedial statutes
retroactive absent Ex Post Facto problems is unquestionable.
See, Freeborn vs: Smith, 69 U.S. at 168,  17 L.ed. at 923
("We do not question the validity of retrospective statutes
that are purely remedial");  See also, Frisbe vs: Whitney,
76 U.S. 187, 19 L.Ed 668, 9 Wall 187 (1869).

Retroactivity  thereby is simply a matter of intent.
See,  e.g., Rivers vs: Roadway Express, 511 U.S. 298, 311,
128 L.Ed 2nd 274, 278,  114 S.Ct. 1510 (1994)("The question
is whether Congress has manifested such intent.").  Because
in Booker, it is the Supreme Court which remedially modified

- 17 -

the Sentencing Reform Act of 1984 as "Congress would have
intended" (Breyer, J., Slip Opinion, pg. 25) had it known in
1984 its mandatory Sentencing Guidelines violated the Sixth
A(id., pg. 22)("We have examined the statute in depth to
determine Congress' likely intent in light of today's
holding.") (Emphasis in original). Booker's indisputable
intent to modify the Guidelines nunc pro tunc is dispositive.

    Lastly, even if the Supreme Court did not assume
Congress' role in modifying the Sentencing Reform Act, in
construing and interpreting it as "Congress would have intended"
(Breyer, J., Slip Opinion, pg. 25) had it known its mandatory
Sentencing Guidelines violated the Sixth Amendment (id., pg.
22), the Supreme Court has necessarily made Booker retroactive.
Like Booker, The Supreme Court in Patterson vs: McLean Credit
Union, 491 U.S. 164, 105 L.Ed. 2d 132, 109 S.Ct. 2363 (1989)
interpreted a 123 year Statute differently than Appellate
Courts had done since its enactment. As to Patterson's
retroactivity, The Court Said:

> A judicial construction of a Statute is
> on authoritative statement of what the
> statute meant before as well as after the
> decision of the case giving rise to the
> construction  [.]
>
> Thus, Patterson provides the
> authoritative  interpretation of the
> phrase make and enforce contracts in
> Civil Rights Act of 1866 before the
> [Congressional] 1991 amendment [over
> ruling] [Patterson's]  interpretation
> provides the base line for our conclusion
> that the  1991 amendment would be

- 18 -

'retroactive' if applied to cases arising
before that date.  Rivers vs: Roadway
Express, 511 U.S. 298, 313,  128 L.Ed 274,
289.

Unlike Rivers, which rejected retroactivity of the
relevant Congressional Amendment because it was so intended by
Congress, The Supreme Court's Judicial Construction of
interpretation of the Sentencing Reform Act of 1984, is
inescapable because "the Court has no authority to depart from
the Congressional command setting the [November 1, 1987]
effective date of the [the] law [] it has exacted []"
Rivers,  511 U.S. at 313, n.12,  128 L.Ed 2d 289, n.12.

## CONCLUSION

THE PETITIONER RESPECTFULLY Submits And Ask The
District Court to answer Petitioner's Retroactivity Argument
and apply sound legal principle to his assertions and claims
concerning Specific Performance and The Right To The benefit
of the bargain.  The Government or United States Justice
Department has failed miserably in response to the Petitioner,
Mendez, and has asked  The Court To ignore the Exhibits,
proof that the Petitioner wanted to  Appeal that the Attorney
of Record was totally ignoring the Petitioner.

Because of Mr. Smith's ignorance of the Petitioner, The Petitioner's Right to Appeal to protect Petitioner's vital interest was totally lost.   The Assistant United States Attorney, Mr. Boyle wrote Petitioner's Attorney, Mr. Smith, advising him of the fact that Petitioner wanted to appeal concrete proof in a nutshell.

WHEREFORE, in light of the foregoing reasons backed up by the record in Exhibits also case Authority, the Petitioner Respectfully Submits That The Court Should:

1.    Order an evidentiary review consistent with the original Motion and Memorandum of Law and Fact also the instant response to the Government; and

2.    Grant The Motion;  and

3.    Three should be no probable cause to appeal whatever This Court deems Appropriate Relief.

Done This __4/4/05__ Day of April,  2005, At the Federal Correctional Institute located at Fort Dix, New Jersey.

RESPECTFULLY SUBMITTED,

DATED: __4. 4 . 05__

JOSE AMIBAL MENDEZ, PRO-SE
Federal Register No _____
Fort Dix Federal Correctional Center
Post Office Box 2000
Fort Dix, New Jersey   08640

- 20 -

## CERTIFICATE OF SERVICE

I, JOSE AMIBAL MENDEZ, DO hereby Certify that the Original plus one copy of Motion in response to the Government was sent to the Clerk upon the Address of The United States District Court, United States Court House, 914 Lafayette Boulevard, Brigeport, Connecticut, 06694, also a copy was served on The United States Attorney's Office located at 450 Main Street, Hartford, Connecticut, 06103 by United States First Class Mail This _4/4/05_ Day Of April, 2005.

Respectfully Submitted,

Dated: _4 - 4 - 05_

_____
JOSE AMIBAL MENDEZ, PRO-SE

- 21 -

*Recieved by inmate on 3/24/05*

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOSE ANIBAL MENDEZ,  :
    Petitioner,  :
                  :     CIVIL ACTION NO.
    v.  :     3:04cv1228 (SRU)
                  :     CRIMINAL CASE NO.
UNITED STATES OF AMERICA,  :     3:02cr274 (SRU)
    Respondent.  :
                  :

## NOTICE TO PETITIONER

On February 20, 2003, the petitioner, Jose Anibal Mendez, pled guilty before this court to possession with intent to distribute and distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 87 months' imprisonment and four years' supervised release on October 23, 2003. On July 21, 2004, Mendez filed a motion to vacate, set aside or correct the sentence under 28 U.S.C. § 2255.

Mendez has twice moved the court to apprise him of the status of his section 2255 motion. This notice responds to those motions.

On January 3, 2005, the court ordered the government to show cause why the relief requested in Mendez's section 2255 motion should not be granted. The court ordered the government to file its response by February 15, 2005. Any reply by the petitioner was due by March 8, 2005. The government moved for an extension of its initial deadline, and the court granted that motion. The government now has until March 15, 2005 to respond to the court's order to show cause why the relief requested should not be granted. Mendez should file his reply brief by April 5, 2005.

RICT COURT
HOUSE
OULEVARD
CT 06604

NESS

1 4 3 0   U.S. POSTAGE

v.                                              :
                                                :
UNITED STATES OF AMERICA,                       :
        Respondent.                             :
                                                :

0&&40+003&