UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:02CR274(SRU) |
| | : | |
| v. | : | |
| | : | |
| JOSE ANIBAL MENDEZ | : | March 3, 2008 |

**GOVERNMENT'S NOTICE REGARDING DEFENDANT'S ELIGIBILITY FOR A
SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)**

On October 23, 2003, the Court sentenced Jose Anibal Mendez principally to an 87 month

term of incarceration. According to the Bureau of Prisons, the defendant is due to be released from

incarceration on February 1, 2009. Mr. Mendez is currently at the Rivers Correctional Institution

in Winton, North Carolina. It appears that he may be deported after having completed his sentence.

Although the defendant has not yet sought relief based upon the changes to the crack cocaine

guidelines that were passed by the Sentencing Commission on November 1, 2007, he does appear

to qualify for a reduction. For the reasons stated herein, the United States respectfully submits that,

on March 3, 2008, the date when the November 1, 2007 amendment becomes retroactive, the Court

may choose to issue an amended judgment and impose a reduced sentence of 70 months (time

served), which accounts for the two-level reduction in the crack cocaine guidelines, and which will

result in the defendant's release from incarceration and likely deportation. While the Court may

issue an amended judgment effective March 3, 2008, the BOP requests a ten day stay after the entry

of an amended judgment before an inmate is released in order to permit the BOP to comply with

certain statutory and public safety obligations.

I.    **BACKGROUND**

On February 20, 2003, the defendant appeared before the Court and pleaded guilty to

distributing five grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1).  In his plea

agreement, Mr. Mendez stipulated to relevant conduct of between 150 and 500 grams of crack

cocaine, which under the controlling Guidelines (§ 2D1.1(c)(3)) carried an offense level of 34.  *See*

PSR at ¶¶ 4 & 14.  The defendant had a criminal history category of I and qualified for the benefits

of the safety valve.  *See* PSR at ¶ 15.  After acceptance of responsibility was credited, Mr. Mendez

had an adjusted offense level of 29 and he faced a Guidelines range of 87 to 108 months of

imprisonment.  *See* PRS at ¶¶ 15, 20, 21 & 37.

On October 23, 2003, this Court sentenced Mr. Mendez to the bottom of the Guidelines

range, which was 87 months of imprisonment, to be followed by four years of supervised release.

## II.    **DISCUSSION**

On November 1, 2007, the Sentencing Commission amended the cocaine base guidelines

provided for under U.S.S.G. § 2D1.1(c).  The amendment in question is Amendment 706, effective

November 1, 2007, which reduced the base offense level for most crack cocaine offenses.[1]  In

Amendment 706, the Commission generally reduced by two levels the offense levels applicable to

crack cocaine offenses.  The Commission reasoned that, putting aside its stated criticism of the 100:1

ratio applied by Congress to powder cocaine and crack cocaine offenses in setting statutory

mandatory minimum penalties, the Commission could respect those mandatory penalties while still

reducing the offense levels for crack offenses.  *See* U.S.S.G., Supplement to App. C, Amend. 706.

Previously, the Commission had set the crack offense levels in Section 2D1.1 above the range that

included the mandatory minimum sentence.  Under the amendment, the Commission has set the

---

[1] Amendment 706 was further amended in the technical and conforming amendments set forth in Amendment 711, also effective November 1, 2007.

offense levels so that the resulting Guidelines range includes the mandatory minimum penalty triggered by that amount, and then set corresponding offense levels for quantities that fall below, between, or above quantities that trigger statutory mandatory minimum penalties. For example, a trafficking offense involving five grams of crack cocaine requires a statutory mandatory minimum sentence of five years imprisonment. *See* 21 U.S.C. § 841(b)(1)(B). Therefore, the revised Guideline applies an offense level of 24 to a quantity of cocaine base ("crack") of at least five grams but less than 20 grams; at criminal history category I, this level produces a range of 51-63 months (encompassing the 60-month mandatory minimum).

The final result of the amendment is a reduction of two levels for each of the ranges set in the Guidelines for crack offenses. At the high end, the Guidelines previously applied offense level 38 to any quantity of crack of 1.5 kilograms or more. That offense level now applies to a quantity of 4.5 kilograms or more; a quantity of at least 1.5 kilograms but less than 4.5 kilograms falls in offense level 36. At the low end, the Guidelines previously assigned level 12 to a quantity of less than 250 milligrams. That offense level now applies to a quantity of less than 500 milligrams.

In the case at bar, the two-level reduction results in an adjusted offense level of 27 (it was level 29) and a new Guidelines incarceration range of 70-87 months. At the original sentencing, the Court imposed a term of incarceration of 87 months, which was the bottom of the range. The bottom of the new range is 70 months of imprisonment.

Section 3582(c)(2) provides:

[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if

3

such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.* The Court may act on this motion without the defendant's presence, and U.S.S.G. § 1B1.10(a)(3) clearly states that "proceedings under 18 U.S.C. § 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant." In addition, Fed. R. Crim. P. 43(b)(4) explicitly provides that a defendant "need not be present" when the proceeding involves a reduction of sentence under 18 U.S.C. § 3582(c). *See also Anderson v. United States*, 241 Fed. Appx. 625, 629 (11th Cir. July 18, 2007) (unpublished) ("Under Federal Rule of Criminal Procedure 43(b)(4), a defendant's presence at a § 3582(c) sentence correction proceeding is *not* required") (emphasis in original); *United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000) (hearing not required); *United States v. Tidwell*, 178 F.3d 946, 948-949 (7th Cir. 1999) (same, noting that "a proceeding under 18 U.S.C. § 3582(c) is not a do-over of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution").

Although the defendant may qualify for a reduction in sentence under Section 3582(c)(2) and the applicable policy statements of the Commission, a reduction of sentence is not automatic. This Court's discretion is set forth in Section 3582(c)(2) itself, which provides: "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Thus, "[t]he grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the Guidelines range is actually reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998);[2] *see also United States v. Colon*, 961

---

[2] In *Vautier*, the Eleventh Circuit held that the district court did not abuse its discretion in denying a Section 3582(c)(2) motion for reduction of sentence, upon considering the 3553(a)

F.2d 41, 46 (2d Cir. 1992) (stating that district court, in the first instance, had to determine to what extent, if any, it has authority to apply retroactive amendment and whether it wishes to exercise its discretion to do so).

Similarly, section 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted." *Id.* app. note 1(B)(I); *see also* U.S.S.G. § 1B1.10 background ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right."). All courts are in accord on this point. *See United States v. Whitebird*, 55 F.3d 1007, 1010 (5th Cir. 1995) (district court permissibly declined to reduce sentence); *United States v. Ursery*, 109 F.3d 1129, 1137 (6th Cir. 1997); *United States v. Coohey*, 11 F.3d 97, 101 (8th Cir. 1993); *United States v. Wales*, 977 F.2d 1323, 1327-28 (9th Cir. 1992); *United States v. Mueller*, 27 F.3d 494, 497 n.5 (10th Cir. 1994).

"Thus, reading § 3582(c)(2) and the Sentencing Guidelines together, the district court must make two distinct determinations before deciding whether to reduce a defendant's sentence under § 3582(c)(2)." *Vautier*, 144 F.3d at 760. First, Section 1B1.10(b) directs:

> In determining whether, and to what extent, a reduction in the term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced . . . .

---

factors. The district court denied the motion, stating that "in light of this Court's expressed concern of the defendant's demonstrated violence and factoring all of the other considerations that went into the establishment of this defendant's sentence, the same sentence would have been imposed under the current amended guidelines." *Vautier*, 144 F.3d at 759.

*Id.* In other words, "the court must substitute the amended guideline range for the originally applied guideline range and determine what sentence it would have imposed. In undertaking this first step, only the amended guideline range is changed. All other guideline application decisions made during the original sentencing remain intact." *Vautier*, 144 F.3d at 760.

Then, in the second step, "in light of the conclusion reached in the first step, the court must consider the factors listed in § 3553(a) and determine whether or not to reduce the defendant's original sentence." *Id.*[3] Subject to the limits set forth in Section 1B1.10(b), the Court may consider all pertinent information in applying the Section 3553(a) factors and determining whether and by how much to reduce the defendant's sentence. In particular, the Court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. Revised application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Revised application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." The application note explains that these factors are relevant in determining whether and by how much to reduce a sentence, but

---

[3] The Eighth Circuit has also endorsed and explained at length this two-step procedure. *United States v. Hasan*, 245 F.3d 682, 684-85 (8th Cir. 2001) (en banc), *citing United States v. Wyatt*, 115 F.3d 606 (8th Cir. 1997). In *United States v. Legree*, 205 F.3d 724, 728 (4th Cir. 2000), however, the court stated that it disagreed with the need for or utility of the two-step method. The essence of its ruling was that the district court's proper consideration of the factors relevant to a Section 3582(c)(2) reduction of sentence, including consideration of the Section 3553(a) factors, may be presumed from the record. In reaching this conclusion, the *Legree* court did not criticize the underlying proposition that trial courts should consider the Guidelines range as affected only by the Guidelines amendment. *Id.*

6

only within the limits set forth in Section 1B1.10(b).

If this Court decides to reduce a defendant's sentence, the extent of the reduction is strictly limited. Congress delegated to the Sentencing Commission the authority to determine to what extent a sentence may be reduced. *See* 18 U.S.C. § 3582(c)(2); 28 U.S.C. § 994(u). The Commission, in turn, directed in Section 1B1.10(b) that, with one exception (where the defendant earlier received a below-Guidelines sentence), "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1)." U.S.S.G. § 1B1.10(b)(2)(A). An application note adds:

> Under subsection (b)(2), the amended guideline range determined under subsection (b)(1) and the term of imprisonment already served by the defendant limit the extent to which the court may reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement. Specifically, if the original term of imprisonment imposed was within the guideline range applicable to the defendant at the time of sentencing, the court shall not reduce the defendant's term of imprisonment to a term that is less than the minimum term of imprisonment provided by the amended guideline range determined under subsection (b)(1).

U.S.S.G. § 1B1.10 app. note 3.[4] Thus, the Court may not reduce the sentence below the range provided by the amended guideline, and "in no case . . . shall the term of imprisonment be reduced below time served." U.S.S.G. § 1B1.10 app. note 3.

---

[4] Application note 3 provides an example:

. . . in a case in which: (1) the guideline range applicable to the defendant at the time of sentencing was 41 to 51 months; (2) the original term of imprisonment imposed was 41 months; and (3) the amended guideline range determined under subsection (b)(1) is 30 to 37 months, the court shall not reduce the defendant's term of imprisonment to a term less than 30 months.

### III.     10-DAY STAY REQUESTED BY THE BUREAU OF PRISONS

Given the burden the BOP expects to face on and immediately after March 3, 2008, the BOP has requested a stay of ten days in situations where entry of an amended judgment will result in a sentence of time served and the immediate release of an offender.  The BOP has requested this ten-day period to allow it to comply with a number of statutorily imposed obligations near the time of an inmate's release.  These obligations include notification to any victims and witnesses of the release of the offender, pursuant to 18 U.S.C. § 3771, as well as notification of law enforcement officials and sex offender registration officials of the release of violent offenders or sex offenders, pursuant to 18 U.S.C. §§ 4042(b) and (c).  Additionally, the BOP is required to collect DNA samples from inmates pursuant to 42 U.S.C. § 14135a.  According to the BOP, without a ten-day stay, the required notifications and/or collection of DNA would not occur until after the inmate has already been released.

Additionally, the ten-day stay would enable BOP staff, Probation Officers, and inmates some time to coordinate transfer of custody to immigration officials or, if the defendant is not subject to deportation, to conduct release planning and attempt to arrange suitable housing, whether it be in a Residential Reentry Center, community shelter, or otherwise.

### IV.     CONCLUSION

The United States is unaware of any section 3553(a) factors that would cause this Court to impose a new sentence other than at the bottom of the new Guidelines range.  Accordingly, it is respectfully submitted that, pursuant to 18 U.S.C. § 3582(c) and the amended Guidelines governing cocaine base, the Court may exercise its discretion to lower the defendant's sentence from 87 months of incarceration to 70 months of incarceration.

Because it appears the defendant will have completed this modified term of incarceration as of March 3, 2008 (the effective date for the retroactive application of the November 1, 2007 amendments), the Court should simply amend the judgment to impose an incarceration term of time served.   In light of the burdens the BOP will likely face immediately following March 3, 2008, the Court in its exercise of discretion may also impose a ten-day stay of the amended judgment.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


MICHAEL J. GUSTAFSON
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct01503
157 Church Street
New Haven, Connecticut  06510

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March, 2008, I caused a copy of the foregoing Notice to be sent by first-class mail, postage prepaid, to the following:

Jose Anibal Mendez
Prisoner No. 14877-014
CI Rivers
PO Box 630
Winton, North Carolina 27986

United States Probation Officer Vicki M. Stackpole
United States Probation Office
157 Church Street, 22nd Floor
New Haven, CT 06510

_____
MICHAEL J. GUSTAFSON
ASSISTANT UNITED STATES ATTORNEY