UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE ANIBAL MENDEZ,  :<br>    Petitioner,   :<br>                           :<br>v.                          :<br>                           :<br>UNITED STATES OF AMERICA,  :<br>    Respondent.   :<br>                           : | NO. 3:02cr274(SRU) |

**RULING ON MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

      On October 2, 2002, a grand jury returned a five-count indictment charging Jose Anibal Mendez with conspiracy to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii) and 846. Mendez was also charged with one count of possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) and 18 U.S.C. § 2, and two counts of possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii) and 18 U.S.C. § 2.

      On February 20, 2003, Mendez entered a guilty plea to count two ("Count Two") of the indictment pursuant to a plea agreement ("Plea Agreement") with the government dated the same day. At the change of plea hearing ("Plea Hearing"), the contents of the Plea Agreement and the stipulation of offense conduct ("Stipulation") were discussed, as were the operation of the Sentencing Guidelines and my authority to decide the quantity of drugs to be used in determining an appropriate sentence. At the sentencing hearing ("Sentencing Hearing") on October 23, 2003, after ensuring that Mendez had the opportunity to examine the presentence report ("PSR"), I sentenced Mendez to eighty-seven months' imprisonment and four years' supervised release.

Mendez filed a pro se petition under 28 U.S.C. § 2255 to vacate, set aside or correct sentence on July 21, 2004. In his petition Mendez asserts an ineffective assistance of counsel claim and seeks a reduced sentence based on a lower Sentencing Guidelines offense level. Mendez argues that his attorney: (1) should have objected to the offense level presented in the PSR; (2) led him to believe that, after applicable offense level reductions, he would face only 37 to 46 months based on an offense level determination calculated from the quantity of drugs involved only in count two; and (3) denied Mendez the opportunity to appeal his sentence. Mendez also claims he never understood the quantity of drugs in the Stipulation and seeks specific performance of the Plea Agreement. Mendez later filed an amended petition on June 12, 2006. Mendez admits the amendment introduced arguments not in his original section 2255 petition, and is therefore untimely. In the amended petition, Mendez contests his conviction, arguing that crack cocaine is not covered by Schedule II of the Controlled Substances Act, and therefore the court lacked jurisdiction to convict him on any drug charges. Mendez also argues the applicability and constitutionality of *United States v. Booker*, 543 U.S. 220 (2005). Mendez incorrectly asserts that the statutory maximum for a violation of 21 U.S.C. § 841(a)(1) is five years' imprisonment, when in actuality, five years' imprisonment is the statutory minimum.

**I.      Background**

The following facts are relevant to consideration of Mendez's petition. Mendez's Plea Hearing occurred on February 20, 2003. At that hearing it was established that Mendez was able to communicate with the translator, Plea Hr'g Tr. at 3, and also with his attorney. *Id*. at 8-9. Mendez's attorney stated that the Plea Agreement had been translated into Spanish and that Mendez had had an opportunity to review it. *Id*. at 9-10. After Count Two of the indictment was

read and explained by the prosecutor, Mendez stated he understood the penalties he could face if he pled guilty to the charge. *Id*. at 11. I explained to Mendez that, if he entered into the plea agreement and entered a guilty plea, then I would be solely responsible for determining the quantity of drugs attributable to him and that I need only determine that quantity by a preponderance of the evidence. *Id*. at 15-16.

Mendez admitted the Plea Agreement had been read to him in Spanish, that he discussed it with his attorney and that he signed it. *Id*. at 18. The government then reviewed the contents of the Plea Agreement. *Id*. at 19-21. I again reviewed the Stipulation with Mendez and he stated that he had read it and admitted to the conduct set forth therein. *Id*. at 23. Mendez then stated that there was nothing promised him that was not included in the Plea Agreement and that he was voluntarily pleading guilty because he was in fact guilty. *Id*. at 24. The government again explained the elements of Count Two and outlined its proof against Mendez, which included testimony from cooperating individuals who took part in a controlled purchase, testimony from Drug Enforcement Agency ("DEA") surveillance agents, tape recorded telephone conversations discussing the controlled purchase, and evidence from a DEA chemist that Mendez sold what was in fact 38 grams of cocaine base. *Id*. at 30-32. Mendez then entered his guilty plea. *Id*. at 34.

Mendez was sentenced on October 23, 2003, to 87 months' imprisonment and four years' supervised release. That sentence was determined using a base offense level of 34, corresponding to possession with intent to distribute 307.9 grams of cocaine base, as set forth in U.S.S.G § 2D1.1(c)(3).[1]  Mendez received a two-level reduction pursuant to U.S.S.G. §

---

[1] All citations to the Sentencing Guidelines refer to the 2002 Guidelines manual.

2D1.1(b)(6), having satisfied the "safety valve" criteria in U.S.S.G. § 5C1.2(a)(1-5). Mendez received an additional three-level reduction for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b). His resulting total offense level was 29 and criminal history category was I, establishing a Guidelines sentencing range of 87 to 108 months' imprisonment. At the Sentencing Hearing Mendez admitted he had reviewed the PSR and I then adopted the factual findings in the PSR and accepted the February 20th Plea Agreement. Sentencing Hr'g Tr. at 4. I also reviewed with Mendez his right to appeal his sentence and the process for doing so. *Id*. at 12-13. At the close of the Sentencing Hearing, the government dismissed Counts One, Three and Four of the indictment, as provided for in the Plea Agreement. *Id.*, Plea Agreement at 5.

## II.   Discussion

### A. The *Strickland* Standard for Ineffective Assistance of Counsel

The Sixth Amendment right to counsel "is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). In *Strickland*, the Supreme Court established a two-part test that must be satisfied in order for a defendant to have his conviction overturned on grounds of ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687. "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. Application of this test requires evaluation of counsel's assistance based on the particular facts and circumstances of each case. *Id*.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. In order to satisfy the second prong of the *Strickland* test "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process . . . ." *Id*. at 696.

"[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id*. Following the direction of the Supreme Court, I will only address the prejudice prong of *Strickland* in dealing with Mendez's claim.

The 2002 Sentencing Guidelines Manual provides: "[I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common plan or scheme as the count of conviction." U.S.S.G. § 1B1.3 cmt. application n.10. Therefore, when establishing the base offense level, it was entirely appropriate to consider the total quantity of drugs reflected in Mendez's relevant conduct, rather than limit consideration to

only the 38 grams charged in Count Two. Mendez signed the Stipulation admitting he had possessed in excess of 300 grams of cocaine base. Mendez also admitted he had read and reviewed both the Plea Agreement and the Stipulation with his attorney and voluntarily signed each document. Furthermore, Mendez explicitly admitted on the record that he was in fact guilty of possessing more than 300 grams of cocaine base.

The Government set forth on the record the evidence it could present against Mendez to prove him guilty of Count Two (38 grams of cocaine base) and provided additional information concerning Mendez's possession of an additional 269.9 grams of cocaine base in other DEA controlled purchases. That evidence was sufficient for me to include the additional amounts of cocaine base in my consideration of relevant conduct, a fact that I explicitly reviewed with Mendez. Assuming, without deciding, that counsel's assistance was ineffective concerning the entire treatment of the Plea Agreement, the end result would remain unchanged. The failure of Mendez's counsel to file a notice of appeal similarly does not prejudice Mendez because Mendez has failed to identify any meritorious issues he could have pursued on appeal. Separated from any action of either Mendez or his attorney, the Sentencing Guidelines would have required me to determine a base offense level of 34, and therefore Mendez has not been prejudiced in any manner.

### B. Specific Performance of the Plea Agreement

Mendez has no basis for claiming entitlement to specific performance of the Plea Agreement. The single contingency the Government was required to satisfy following Mendez's guilty plea was to dismiss Counts One, Three and Four. The government fulfilled that obligation. Additionally the Plea Agreement itself states:

> The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation of coercion of any kind.

Plea Agreement at 4. "The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement." *Id*. at 6. Absent from the Plea Agreement is any reference to a specific term of imprisonment and therefore Mendez had no reason to believe that his guilty plea would result in a sentence different from the one he received. Therefore, the specific performance claim is without merit.

### C. Lack of Jurisdiction Over Narcotics Count

Mendez argues that the court lacks jurisdiction over his case because cocaine base is not a scheduled controlled substance. Mendez's argument is essentially identical to the defendant's argument in *United States v. Sanders*, 237 F.3d 184 (2d Cir. 2001) (*per curiam*).

> [Defendant's] argument that cocaine base and crack cocaine are not scheduled controlled substances because they are not listed by name in the schedule is without merit. Under 21 U.S.C. § 802(6), a controlled substance is defined as a drug or other substance, or immediate precursor, included in schedule I, II, III, IV or IV of part B of this subchapter. Schedule II lists coca leaves . . . ; cocaine . . . ; or any compound, mixture, or preparation which contains any quantity of any the substances referred to in this paragraph. Because cocaine base and crack cocaine are mixtures that contain cocaine and are derived from coca leaves, both substances are encompassed by schedule II's definition.

*Id*. at 185 (internal citations and quotations omitted). For the reasons set forth in *Sanders*, Mendez's argument is without merit.

### D. Applicability and Unconstitutionality of *Booker*

Mendez argues that the sentence at the top of the applicable Guidelines range is the maximum sentence that can be imposed on him. Mendez supports his argument based in part on the incorrect assertion that the statutory maximum sentence he faced was five years'

imprisonment, rather than a statutory minimum of five years' imprisonment. *See* 21 U.S.C. § 841(a)(1). Mendez further argues that the *Booker* remedial decision is *ex post facto* as to his case and therefore should not apply. Even Taking Mendez's incorrect assumptions about the law as true, and removing *Booker* from the equation, Mendez still did not receive a sentence in excess of the top of the Guidelines range or the statutory maximum for Count Two. Mendez in fact received the minimum Guidelines' sentence for his base offense level and criminal history category.

The Supreme Court has held that "any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis supplied). The Court further clarified, "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (emphasis in original). In *Booker*, the Court simply reaffirmed its holding in *Apprendi*: "Any fact (other than a conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty . . . must be admitted by the defendant . . . ." 543 U.S. at 756.

Applying those legal principles to Mendez's case it becomes apparent that his claim that he was illegally sentenced must fail. Mendez admitted to possessing in excess of 300 grams of cocaine base in the Stipulation. That admission satisfies the requirements of *Apprendi*, *Blakely* and *Booker*, and establishes a base offense level of 34. Base offense level 34, with applicable reductions, and combined with a criminal history category of Level I, results in a Sentencing Guidelines sentencing range of 87-108 months' imprisonment. Mendez was sentenced to the lowest possible term of imprisonment provided by the Guidelines for the conduct to which he

admitted in the Stipulation. Aside from accepting the drug quantities in the Stipulation, I found no additional facts that increased Mendez's base offense level.

### III. Conclusion

For the foregoing reasons, Mendez's section 2255 petition to vacate, set aside, or correct sentence is **DENIED**. The clerk shall close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 18th day of April 2008.

                                          /s/ Stefan R. Underhill
                                             Stefan R. Underhill
                                             United States District Judge